

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-19-1999

# Official Committe v. Westmorelandd Cty

Precedential or Non-Precedential:

Docket 98-3433

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"Official Committe v. Westmorelandd Cty" (1999). *1999 Decisions.* Paper 206.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/206

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed July 19, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-3433

OFFICIAL COMMITTEE OF UNSECURED CREDITORS
OF LIFE SERVICE SYSTEMS, INC.,
        Appellant

v.

WESTMORELAND COUNTY MH/MR

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 97-cv-01852)
District Judge: Honorable William L. Standish

Argued February 8, 1999

Before: SLOVITER, ROTH and STAPLETON, Circuit Judges

(Filed: July 19, 1999)

        F. Scott Gray
        Thomas M. Ferguson (Argued)
        Sable, Makoroff & Gusky
        Pittsburgh, PA 15219

         Attorneys for Appellant

        K. Lawrence Kemp (Argued)
        Kemp & Kemp
        New Kensington, PA 15068

         Attorney for Appellee

OPINION OF THE COURT

SLOVITER, Circuit Judge.

In January 1997, Life Service Systems, Inc. ("LSS") filed a petition for voluntary bankruptcy under Chapter 11. LSS provided mental health services under contract with the Westmoreland County Mental Health and Mental Retardation Program (the "County"), a county-created agency fulfilling the state-imposed obligation to address the needs of the mentally ill population.

Before us is the appeal of the Official Committee of Unsecured Creditors of Life Service Systems, Inc. (the "Creditors"), from the decision by the District Court holding that LSS's title to certain assets divested to the County upon the termination of the contract between them. Although the parties have briefed the merits of the appeal, we determine that jurisdiction is the dispositive issue.

I.

Beginning in 1988, the County entered into a series of identically worded, one-year contracts with LSS (or its predecessor) to provide mental health services. Rather than paying LSS on a fee-for-service basis, the County agreed to reimburse LSS for its expenses and LSS could retain a portion of its revenues up to a specified maximum. Permissible expenditures for which it was reimbursed included the purchase of fixed assets, which the contract defined as items costing at least $500 and either having an expected useful life exceeding one year or being repeatedly usable without material impairment of their physical condition.

The contract provided that "[t]itle to all fixed assets purchased in whole or in part with funds from this Agreement . . . shall vest during the term of this Agreement in [LSS] and shall automatically divest upon the termination or cancellation of the Agreement and vest with County." App. at 118. In accordance with this title clause, LSS was prohibited during the term of the agreement or

2

within ninety days after its termination or cancellation from selling, leasing, donating, or otherwise disposing of fixed assets purchased with funds under the agreement without County approval. The contract further provided that, upon its expiration, the County could exercise one of three options regarding the assets:

> A. Take possession of said fixed assets and reimburse any other funding sources according to their percentage contribution based upon fair market value as determined by an independent appraisal;
>
> B. Direct that said fixed assets be sold pur suant to an independent appraisal reflecting an acceptable fair market value in accordance with [State law] with the proceeds of the sale retained by the County;
>
> C. Allow retention by [LSS] upon proport ionate payment to the County of the share contributed by the County as determined by the fair market value in accordance with an independent appraiser. . . .

App. at 118-19; see 55 Pa. Code S 4300.106(c).

Despite the contract's procedure for divesting title, Pennsylvania regulations governing the provision of mental health services state that, "[i]f the provider holds title to the asset, the provider may pledge the assets as collateral for loans necessary to the agency." 55 Pa. Code S 4300.106(d). Consequently, LSS obtained three loans for building renovations in 1995 from National City Bank of Pennsylvania (the "Bank"), and used some of the fixed assets for collateral, as a result of which the Bank possesses an undisputed security interest in existing and future-acquired equipment.

At the time LSS filed for bankruptcy in January 1997, it was in the middle of its contract with the County, which was due to expire June 30, 1997. LSS continued to provide services to the County under the contract as a debtor in possession. The County elected to end the contractual relationship with LSS at the conclusion of that term, terminated the agreement as of June 1997, and contracted with another company to provide the services LSS had provided. The County filed a Motion for Relief From Stay

3

later that same month, by which it sought a determination that title to certain fixed assets is now vested in the County and sought their possession. Both the Bank and the Creditors objected.

After a hearing on the motion, the Bankruptcy Courtfirst concluded that although LSS had title to the fixed assets at the time of filing, that title was divested after June 30, 1997, when the contract terminated. It held that section 541(a) of the Bankruptcy Code1 does not give the estate more than the debtor had at the time of the filing, which, in this case, was title that would divest upon the termination of the agreement. The court next held that the County did not have a "secured" interest in the fixed assets within the contemplation of the Uniform Commercial Code, because the purpose of vesting "title" in thefixed assets in the County was not to secure payment or performance of any obligation owed to the County but to ensure that the fixed assets were available for use by any other provider of the necessary mental health services with whom the County might contract in the future. The Bankruptcy Court finally concluded that the Bank could enforce its perfected security interest against the County, so the County would receive the fixed assets subject to that interest.

Both the Creditors and the County appealed to the District Court, invoking jurisdiction pursuant to 28 U.S.C. S 158(a) for review of what the District Court termed a "final order."

On the Creditors' appeal, the District Court distinguished between the status of the fixed assets listed in the Fixed Asset Ledger and the status of the motor vehicles listed in the Motor Vehicle chart of the same exhibit. As to the

_____

1. Section 541(a)(1) provides:

    (a) The commencement of a case under section 3 01, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

    (1) Except as provided in subsections (b) and (c)(2) of this section,
all legal or equitable interests of the debtor in property as of the
commencement of the case.

11 U.S.C. S 541(a)(1).

4

former, the court affirmed the Bankruptcy Court's determination that, at the termination of the contract, title in the property which had been purchased with contract funds vested in the County. As to the motor vehicles, the District Court concluded that there was a question of fact as to whether those motor vehicles were in fact purchased with funds received from the contract or with other funds. Therefore, the court remanded the case to the Bankruptcy Court for further proceedings, including an evidentiary hearing on that issue.

On the County's appeal with respect to the order regarding the Bank's rights as to the fixed assets, the District Court rejected the County's arguments and agreed with the Bankruptcy Court's disposition that the Bank had an enforceable security interest. In conclusion, the District Court affirmed the Bankruptcy Court's decision for the most part and remanded for factual findings regarding whether the motor vehicles were purchased in whole or in part with the County's funds.

The Creditors, but not the County, appeal. The Creditors argue that both the Bankruptcy Court and the District Court erred in "failing to consider the status of LSS as debtor and trustee as a hypothetical lien creditor under 11 U.S.C. S 544(a)(1) and (2), with a judicial lien against all `fixed assets.' " Under 11 U.S.C. S 1107(a), the debtor in possession has almost all of the rights, powers, and duties of a trustee.[2] The Creditors contend that it was error to hold that the debtor was divested of title in thefixed assets on termination of the contract. They also seek an evidentiary hearing on the County's interest in thefixed assets (in addition to the hearing ordered on the motor vehicles), i.e., whether the items listed were purchased in whole or in part with the County's funds.

II.

Although none of the parties has questioned our

_____

2. At the outset of the bankruptcy, LSS continued its affairs as debtor in possession. However, by an order of November 7, 1997, a Chapter 11 trustee was approved in the case.

jurisdiction to hear this appeal, we have an independent obligation to ensure that appellate jurisdiction is present. See F/S Airlease II, Inc. v. Simon, 844 F.2d 99, 103 (3d Cir. 1988).

Under 28 U.S.C. S 158(d), the courts of appeals have jurisdiction over appeals from "all final decisions, judgments, orders, and decrees entered" by a district court reviewing a bankruptcy court decision under 28 U.S.C. S 158(a). Generally speaking, "when the bankruptcy court issues what is indisputably a final order, and the district court issues an order affirming or reversing, the district court's order is also a final order." In re Porter, 961 F.2d 1066, 1072 (3d Cir. 1992). However, where the district court does not merely affirm or reverse and instead remands the case to the bankruptcy court, the finality of the order is less clear.

Most courts of appeals analyze the jurisdictionalfinality of a district court's remand by considering the bankruptcy court's responsibility on remand. See In re Lopez, 116 F.3d 1191, 1192 (7th Cir. 1997) (citing cases from eight other circuits). If the bankruptcy court's actions will be"purely ministerial in character," such as computing prejudgment interest according to an undisputed rate and time period, then the remanded proceedings are unlikely to engender further appeals and the order is final. Id.

This court has frequently noted that we have "taken a flexible, practical approach to interpreting thefinality requirement in bankruptcy cases." In re Blue Coal Corp., 986 F.2d 687, 689 (3d Cir. 1993); accord F/S Airlease II, 844 F.2d at 103 (describing a "more pragmatic and less technical way [of viewing finality] in bankruptcy cases than in other situations" (internal quotation marks omitted)). This entails balancing "a general reluctance to expand traditional interpretations regarding finality and a desire to effectuate a practical termination of the matter before us." In re Meyertech Corp., 831 F.2d 410, 414 (3d Cir. 1987).

In In re Market Square Inn, Inc., 978 F.2d 116, 120 (3d Cir. 1992), we applied this flexible approach tofind appellate jurisdiction over the district court's order holding that a lease between the debtor and its landlord survived

after the filing of the bankruptcy. In so holding, we quoted from our earlier opinion in Wheeling-Pittsburgh Steel Corp. v. McCune, 836 F.2d 153, 158 (3d Cir. 1987), where we noted that "bankruptcy cases `frequently involve protracted proceedings with many parties participating,' " and observed that, "[t]o avoid the waste of time and resources that might result from viewing discrete portions of the action only after a plan of reorganization is approved, courts have permitted appellate review of orders that in other contexts might be considered interlocutory." Id. at 158 (quoting In Re Amatex Corp., 755 F.2d 1034, 1039 (3d Cir. 1985)) (internal quotation marks omitted).

We consider four factors to determine whether a district court's order is final and reviewable: "the impact upon the assets of the bankrupt estate, the necessity for further fact-finding on remand, the preclusive effects of our decision on the merits of further litigation, and whether the interest of judicial economy would be furthered." In re Blue Coal Corp., 986 F.2d at 689 (internal quotation marks omitted). Of these, the "most important" factor is the impact on the assets of the estate. In re Market Square Inn, Inc., 978 F.2d at 120 (internal quotation marks omitted).

Our decision in F/S Airlease II is illustrative. In that case, a company that had leased back a Boeing airplane that it had previously sold to the lessor filed for bankruptcy under Chapter 11 of the Bankruptcy Code. See 844 F.2d at 101. Some time thereafter, the bankruptcy court held a hearing and approved a lease of the airplane that had been negotiated by a broker. Seven months after that approval, the broker filed a motion for a nunc pro tunc appointment as broker, with an attendant claim for administrative expenses. The bankruptcy court approved the requests, but the district court affirmed only the appointment and remanded for substantiation of the requested expenses. The creditor appealed the appointment. Id. at 102-03.

We considered, and upheld, our appellate jurisdiction. We noted that "the order has a significant impact on the assets of the estate" because the amount the broker sought constituted a "substantial portion" of the estate's assets, approval of the award to the broker would "severely affect the rights of other creditors," and "delay of the final

7

resolution of the matter could have an adverse impact on the debtor's successful reorganization." Id. at 104. Although the district court had remanded for further fact-finding, we held that did not affect our jurisdiction over the portion of its order approving the nunc pro tunc employment. The remand was only for the matter of the amount of the broker's compensation, and did not "relate[ ] to a central issue on appeal," the propriety of the retroactive appointment. Id. at 104 n.4 (quoting In re Stanton, 766 F.2d 1283, 1287 (9th Cir. 1985)).

Our primary inquiry, therefore, must be directed to the impact of the order at issue on the estate. In this case, the Creditors are appealing the District Court's determination that, at the termination of the County's contract with LSS, title in property which had been purchased with contract funds vested in the County. The issue that the District Court remanded to the Bankruptcy Court is whether the motor vehicles were also purchased with contract funds. At oral argument, we inquired of counsel for the Creditors regarding the potential impact on the estate, and counsel, rather than asserting that the impact on the estate would be substantial, candidly replied that the appeal was precautionary. Based on our review of this case, we cannot conclude that the impact on the estate will be substantial if the remand is completed before the issue of the County's title in the property is reviewed.

Moreover, even if the furniture were not subject to the Bank's perfected security interest, this case differs from cases such as In re Market Square Inn, Inc. in which we took jurisdiction. In that case, the debtor's business had a chance of continuing in the reorganization only if the debtor retained the lease in question. 978 F.2d at 120–21. By contrast, here the County has awarded the mental health services contract to another entity and presumablyfiled its motion for relief from the stay so that the new contractor could employ those assets. Inasmuch as LSS no longer requires the assets in order to continue in its former business with the County, this case does not fall into the category of cases where an immediate appeal is necessary because of the impact of the District Court's ruling on the possibility of a viable reorganization.

8

Admittedly, were we to adopt the Creditors' argument, based on the scope of the power of a hypothetical judicial lien creditor under section 544, we would obviate the need for further fact-finding by the Bankruptcy Court. Yet the fact-finding that is the subject of the District Court's remand to the bankruptcy court requires more than a "purely ministerial" function. See, e.g., United States Trustee v. Gryphon at the Stone Mansion, Inc., 166 F.3d 552, 556-57 (3d Cir. 1999) (citing In re Lopez, 116 F.3d 1191, 1192 (7th Cir. 1997)). On the other hand, were we to decide the merits issue in favor of the County, we would not necessarily obviate further appeals following the bankruptcy court's determination of the County's share of the motor vehicle purchases, and the litigation could be protracted.

Finally, it appears likely that our failure to decide the Creditors' appeal at this time will not prevent the reorganization from proceeding, if that is possible. Nor will it result in a waste of judicial time and resources. This is in sharp contrast to the decisions in which we upheld our jurisdiction. For example, in In re Market Square Inn, Inc. we observed that reversing the bankruptcy court's decision would foreclose any possible reorganization because the lease had a substantial impact on the estate and the debtor would be unable to obtain new financing for its business without the lease. 978 F.2d at 120-21. Similarly, in F/S Airlease we opined that the effect of failing to take jurisdiction at that stage could be to transform the Chapter 11 reorganization into a Chapter 7 involuntary bankruptcy. F/S Airlease, 844 F.2d at 104.

Here, the furniture remains subject to National City Bank's perfected security interest and will not be distributed to another creditor. Moreover, according to the County, only two parties have an interest in the motor vehicles. There is, therefore, a lesser danger of wasting the court's or the parties' time and resources if they move forward in the Bankruptcy Court to resolve the issue of the source of the funds used to purchase the motor vehicles. On balance, we conclude that the District Court order appealed from is not final under section 158(d).

III.

Accordingly, we will dismiss the appeal for lack of jurisdiction.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

10