

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-19-2009

# Hagan v. Rogers

Precedential or Non-Precedential: Precedential

Docket No. 07-1412

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Hagan v. Rogers" (2009). *2009 Decisions.* Paper 1099.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1099

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-1412
_____


LEWIS IRA HAGAN; JAMES HEMPHILL;
EFRAIM ESQUILIN; CHRISTOPHER MARK;
WILLIAM WEISS; CHRISTOS PAPACRISTOS;
LOUIS GEORGE JOHNSTON, JR.; TYMIL MASON;
CLAUDE FRANKLIN; PETER BRAUN;
OLIVER MASON; TOBORIS WRIGHT;
RONALD YOUNG; ALLAN LOVENSON,
                                         Appellants

v.

GRACE ROGERS, Administrator;
GEORGE HAYMAN,
Commissioner New Jersey State Prisons;
DR. HOCHBERG,
Doctor Employed By Correctional Medical Services;
CORRECTIONAL MEDICAL SERVICES, INC.;
BERNARD GOODWIN, Asst. Administrator


_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 06-cv-05033)
District Judge: Honorable Stanley R. Chesler
_____

Argued February 3, 2009

Before:  RENDELL, JORDAN, and ROTH, <u>Circuit Judges</u>

(Filed: June 19, 2009 )
_____

Lewis Ira Hagan  (pro se)
James Hemphill  (pro se)
Efraim Esquilin  (pro se)
William Weiss  (pro se)
Christos Papacristos  (pro se)
Louis George Johnston, Jr.  (pro se)
Tymil Mason  (pro se)
Claude Franklin  (pro se)
Peter Braun  (pro se)
Toboris Wright  (pro se)
Allan Lovenson  (pro se)
Adult Diagnostic & Treatment Center
8 Production Way
P. O. Box 190
Avenue, NJ    07001

Christopher Mark  (pro se)
Rockview SCI
P. O. Box A
Bellefonte, PA   16823

Oliver Mason  (pro se)
Apartment 1114
180 South Orange Street
Newark, NJ  07103

Ronald Young  (pro se)
49 Autumn Court
Ledgewood, NJ  07852

Joel McHugh, Esq.    **[ARGUED]**
Nancy Winkelman, Esq.
Schnader Harrison Segal & Lewis
1600 Market Street, Suite 3600
Philadelphia, PA   19103

*Counsel for Appellants*
*Lewis Ira Hagan; James Hemphill; Efraim Esquilin;*
*Christopher Mark; William Weiss; Christos Papacristos;*
*Louis George Johnston, Jr.; Tymil Mason; Claude Franklin;*
*Peter Braun; Oliver Mason; Toboris Wright; Ronald Young;*
*Allan Lovenson*

3

Larry R. Etzweiler, Esq.   **[ARGUED]**
Keith S. Massey, Jr., Esq.
Office of Attorney General of New Jersey
Division of Law
25 Market Street
Richard J. Hughes Justice Complex
Trenton, NJ   08625
*Counsel for Defendant - Amicus Curiae*
  *State of New Jersey*

_____

OPINION OF THE COURT

_____

RENDELL, <u>Circuit Judge</u>.

The central question before this Court is whether it is clear and manifest that Congress, through the Prisoner Litigation Reform Act of 1995, intended to remove prisoners from the definition of "Persons" permitted to join claims under Federal Rule of Civil Procedure 20.  We answer this question in the negative.

Appellants are fourteen state inmates of the Adult Diagnostic & Treatment Center in Avenel, New Jersey ("ADTC"). The prisoners jointly filed a single complaint, on behalf of themselves and a purported class, alleging that officials associated with the facility violated their constitutional rights by failing to contain and treat a serious and contagious skin condition. The prisoners requested *in forma pauperis* ("IFP") status and the appointment of counsel. Before the Defendants had been served, the District Court for the District of New Jersey dismissed thirteen of the prisoners *sua sponte*, with leave to file amended individual complaints, after concluding that prisoners were barred from permissive joinder under Federal Rule of Civil Procedure 20 ("Rule 20") The Court also denied class certification under Federal Rule of Civil Procedure 23 ("Rule 23"). Appellants challenge both decisions on appeal.

This appeal presents several issues. First, we must determine whether we have jurisdiction to review the District Court's order denying joinder, and if so, whether IFP prisoners are barred from Rule 20 joinder as a matter of law. We are also asked to decide whether to exercise jurisdiction over the District Court's denial of class certification, and if so, whether the denial was proper.

For the reasons discussed below, we conclude that we have jurisdiction to review the District Court's order denying joinder, and that IFP prisoners are not categorically barred from

5

joining as plaintiffs under Rule 20. Furthermore, filing fees should be assessed against any plaintiff permitted to join under Rule 20 as though each prisoner was proceeding individually. Finally, we elect to exercise jurisdiction over the class certification question, and conclude that the District Court's explanation for denying certification was inadequate. We will accordingly remand the matter for further proceedings consistent with this opinion.

## I. Background

Appellants filed a single *pro se* complaint on October 20, 2006 in the U.S. District Court for the District of New Jersey, against officials associated with the ADTC, a state facility for the detention and treatment of convicted sex offenders. The prisoners allege that the Defendants violated their Eighth and Fourteenth Amendment rights by failing to address the threat of a serious and undiagnosed contagious skin disease, possibly scabies, spreading through the facility. Appellants also moved to certify a class of all persons similarly situated pursuant to Rule 23(b)(3). The prisoners requested IFP status and applied for the appointment of counsel.

Before Defendants had been served, the District Court issued an order *sua sponte* on January 25, 2007, dismissing without prejudice all Plaintiffs, except Lewis Hagan, upon concluding that permissive joinder was unavailable to IFP prisoner litigants. The Court suggested that Rule 20 joinder may

be preempted by certain provisions of the Prison Litigation Reform Act of 1995 ("PLRA").  Pub. L. 104-134, 110 Stat. 1321 (Apr. 26, 1996).  The Court was also persuaded by the reasoning of other district courts that had determined that general circumstances of incarceration render joint prisoner litigation impractical.  The Court did not discuss whether the Plaintiffs satisfied the basic requirements of joinder under the Rule, nor did it identify any circumstances of incarceration that rendered Plaintiffs' joinder impractical.  The Court ordered a new case to be opened for each dismissed Plaintiff, and gave each prisoner 30 days to file an amended complaint in order to proceed individually.  The Court deferred consideration of the requests for IFP status and for the appointment of counsel pending the filing of the amended complaints.

In the same *sua sponte* order, the District Court also denied Appellants' motion to proceed as a class action pursuant to Rule 23(b)(3).  The Court identified concerns regarding the typicality of the named Plaintiffs' claims and the prisoners' disparate factual circumstances, particularly with regard to medical needs and injury.  The Court also reasoned that a *pro se* prisoner litigant could not represent a class of fellow inmates.

None of the Plaintiffs filed amended complaints within the requisite 30 days, but all joined in appealing to this Court for review of both the joinder and class certification rulings.  On February 1, 2007, Appellants also filed a motion to stay all action relating to the District Court's January 25 order, and

asserted their belief that the Court's applications of Rules 20 and 23 were incorrect. On May 4, 2007, after the original 30-day period for amendment had expired, the District Court granted a stay and stated in its order that Appellants would have 30 days to file amended complaints after we completed our review of their appeal.

We assigned counsel as *amicus curiae* on behalf of Appellants and asked counsel to address the following questions: (1) Whether this Court has jurisdiction to review the District Court's order denying joinder; (2) if so, whether prisoners are barred from Rule 20 joinder as a matter of law; (3) if prisoners are not barred from permissive joinder, how court fees should be assessed among the joint plaintiffs; and (4) whether the District Court improperly denied class certification. Although Defendants have not yet been served, we invited the Attorney General of New Jersey to similarly respond to these questions through an amicus brief, and she has done so. We address each of the questions presented below.

## II. Rule 20 Joinder

## A. Jurisdiction

Appellants seek review of the District Court's order denying joinder and dismissing all claimants except Hagan without prejudice, and with leave to amend. The only arguable basis for this Court to review the decision is 28 U.S.C. § 1291,

8

which authorizes appellate jurisdiction over final orders of the district courts. *Welch v. Folsom*, 925 F.2d 666, 667 (3d Cir. 1991). "A final order is one that 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Id.* at 668 (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467 (1978)).

While an order dismissing a complaint without prejudice is normally not final within the meaning of § 1291, "a dismissal with leave to amend will be treated as a final order if the plaintiff has elected to stand upon the original complaint." *Frederico v. Home Depot*, 507 F.3d 188, 192 (3d Cir. 2007) (internal quotation omitted). Appellants argue that the order was final because the prisoners chose to stand on their initial complaint, rather than filing amended complaints to proceed individually. Respondents counter that the prisoners did not stand on their complaint because they requested and received a stay of the District Court's order pending the resolution of this appeal.

We cannot discern from our prior cases a clear rule for determining when a party has elected to stand on his or her complaint. In *Frederico*, we determined that a plaintiff elected to stand on her complaint where at no time during the proceedings did she seek to correct the purported pleading deficiencies, but instead repeatedly asserted that her complaint was sufficient as filed. *Id.* at 192. In *Batoff v. State Farm Insurance Co.*, 977 F.2d 848 (3d Cir. 1992), we determined that

we had jurisdiction when a plaintiff did not amend his dismissed complaint within the 30 days allotted by the district court. *Id.* at 851 n.5. We were also satisfied that certain plaintiffs in *Tiernan v. Devoe*, 923 F.2d 1024 (3d Cir. 1991), elected to stand on their dismissed claims after they renounced, by letter briefs filed with this Court, any intention to reinstitute proceedings against the defendants at issue. *Id.* at 1031.

There is no question that none of the prisoners amended their complaints within the 30 days ordered by the District Court. All of the Plaintiffs joined the instant appeal, and there is no evidence that any ever wavered from their argument that they should be permitted to join under Rule 20. These circumstances indicate that the Appellants stand on their initial complaint, as had the plaintiffs in *Frederico* and *Batoff*. A potentially distinguishing aspect of this case is that the Appellants sought, and the District Court granted, a stay of its January 25 order that apparently would preserve the rights of Appellants to proceed individually if they lost on the Rule 20 issue here. Although none of the Appellants filed amended complaints within 30 days of the order, they all joined in requesting a stay of that order on February 1, 2007.

Yet the District Court did not grant the stay until May 4, 2007, long after the 30 days afforded to the Plaintiffs had expired. From the expiration of the dismissal order granting leave to amend until the grant of the stay, the Plaintiffs were in the same position as the plaintiff in *Batoff*. If they were not

intent on staking their claims on the fate of this appeal, they would have been expected to file amended complaints as the deadline neared, in the absence of a ruling on the requested stay. After the 30 days expired, the subsequent issuance of the stay – which included a further right to amend – was a fortuitous development outside of their control. We are persuaded that the Plaintiffs have sufficiently demonstrated their intent to stand on their original complaint.

Moreover, by requesting the stay, Appellants were squarely stating their opposition to District Court's interpretation of Rule 20, and their desire to proceed jointly. The Court's invitation to the prisoners to amend and proceed individually directly contradicted their position on appeal. This situation is different from a typical dismissal with leave to amend where the amendment could cure a particular pleading flaw or failure. This is also different from a typical joinder situation in which a court might grant or deny a motion to amend a complaint in order to add plaintiffs. *See Michelson v. Citicorp Nat'l Servs., Inc.*, 138 F.3d 508, 512 (3d Cir. 1998). Here, the District Court effectively ruled the joint complaint legally inadequate, and subsequent individual pleading by Appellants would have effectively conceded the joinder issue. This should be viewed as the type of situation where jurisdiction exists under § 1291 because there is nothing a plaintiff can due to cure the defect in a dismissed complaint. *Deutsch v. United States*, 67 F.3d 1080, 1083 (3d Cir. 1995). The District Court's

11

ruling foreclosed further joint action, and Plaintiffs could do nothing to cure this purported defect.

For these reasons, we conclude that we have jurisdiction under § 1291.

**B. Rule 20 and IFP Prisoner Litigants**

Appellants argue that the District Court erred in concluding that prisoners were categorically barred from joining as plaintiffs under Rule 20. Amicus for Respondents contends that the District Court interpreted Rule 20 correctly, in light of certain provisions of the PLRA, and in consideration of the unique circumstances of incarceration. We conclude that nothing in the PLRA demonstrates that Congress intended to alter the plain language of Rule 20, and that conditions of incarceration should not be considered in disregarding the unambiguous language of the Rule. Accordingly, prisoner litigants may not be categorically precluded from joining as plaintiffs under Rule 20.

A district court's order severing parties for failure to satisfy the joinder requirements of Rule 20 is reviewed for abuse of discretion. *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997). A district court abuses its discretion when "its decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Danvers Motor Co., Inc. v. Ford Motor Co.*, 543 F.3d 141, 147

12

(3d Cir. 2008) (internal quotation marks omitted).  The District Court's order denying joinder was not based on any findings regarding the particular plaintiffs in the case or the parameters of Rule 20 itself.  Instead, the Court concluded that the prisoners were barred from joinder in light of certain statutory provisions and general circumstances of incarceration.  Thus, the operative question is whether the District Court based its order on an erroneous conclusion of law.

The language of Rule 20 that is pertinent to this matter is plain and unambiguous:

> Persons may join in one action as plaintiffs if:
>
> (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all plaintiffs will arise in the action.

Fed. R. Civ. P. 20(a)(1).  For courts applying Rule 20 and related rules, "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).  Rule 20 permits "the joinder of a person who has some

interest in an action . . . , even when that interest is not so strong as to require his joinder" under Rule 19. *Field v. Volkswagenwerk AG*, 626 F.2d 293, 299 (3d Cir. 1980). Nothing in the plain language of the Rule indicates that prisoners are excluded as "persons" permitted to join as plaintiffs.

The District Court did not apply Rule 20 by determining whether Appellants' claims arise from "the same transaction, occurrence, or series of transactions or occurrences," or whether there was "any question of law or fact common to all plaintiffs." Fed. R. Civ. P. 20(a)(1).[1] Instead, the Court relied on arguments raised by other courts suggesting that prisoners are categorically excluded from Rule 20. These arguments fall into two general categories: (1) With the enactment of the PLRA, Rule 20 has effectively been modified to exclude prisoner litigants; and (2) characteristics of prison populations render prison litigants ill-suited for Rule 20 joinder. We address these arguments in turn.

1. Rule 20 and the PLRA

The two provisions of the PLRA that have troubled other courts in the context of joinder of claims are codified as 28 U.S.C. §§ 1915(b) and 1915(g). Section 1915(b) provides

---

[1]In fact, it would appear that the claims asserted here would normally be good candidates for joinder.

that "if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee." § 1915(b)(1). Payment of the full fee may be spread over a number of monthly payments. § 1915(b)(2). Respondents argue that collecting full fees from multiple joint litigants to comply with § 1915(b)(1) would conflict with § 1915(b)(3), which provides, "In no event shall the filing fee collected exceed the amount of fees permitted by statute for the commencement of a civil action or an appeal of a civil action or criminal judgment." § 1915(b)(3).

Section 1915(g) limits the availability of IFP status to prisoners through a "three strike" rule, which provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

§ 1915(g). A district court is obligated to dismiss a case *sua sponte* upon finding it, *inter alia*, frivolous or malicious, or that it fails to state a claim. 28 U.S.C. § 1915(e)(2).

15

The District Court did not expressly decide that there was a conflict between § 1915(b) and Rule 20, but referred to tensions between the provisions identified by other courts. The Court of Appeals for the Eleventh Circuit has held that § 1915(b)(1) preempted Rule 20 as to IFP prison litigants in *Hubbard v. Haley*, 262 F.3d 1194 (11th Cir. 2001). The court reasoned that, by plainly requiring each IFP prisoner to pay the full filing fee, § 1915(b)(1) repealed Rule 20 joinder as to IFP prisoner litigants. *Id.* at 1198. The court was persuaded by Congress's desire to deter frivolous suits, and the recognition by other courts that excessive prisoner litigation presented a problem. *Id.*

However, decisions from the Courts of Appeals for the Sixth and Seventh Circuits are at odds with *Hubbard*. In a *sua sponte* administrative order addressing the effects of the PLRA, the Chief Judge of the Sixth Circuit ordered that filing fees are to be divided among prisoner litigants choosing to join in suits, thus indicating that prisoners were not barred from doing so. *In re Prison Litigation Reform Act*, 105 F.3d 1131, 1137-38 (6th Cir. 1997). The Court of Appeals for the Seventh Circuit engaged in a more thorough analysis when it reversed a district court's interpretation of Rule 20 in *Boriboune v. Berge*, 391 F.3d 852 (7th Cir. 2004). The court considered the same two concerns that District Court considered here – namely, that joinder of claims in the context of prisoner litigation presents unique challenges, and that joinder could undermine § 1915 if

16

prisoners were permitted to split fees or avoid strikes. *Id.* at 854. However, the court stated:

> It does not follow that § 1915 has superseded Rule 20. The PLRA does not mention Rule 20 or joint litigation. Repeal by implication occurs only when the newer rule is logically incompatible with the older one. And there is no irreconcilable conflict between Rule 20 and the PLRA: Joint litigation does not relieve prisoners of any duties under the more recent statute.

*Id.* (internal citations omitted).

The court concluded that, while the PLRA did not preempt joinder, § 1915(b)(1) did affect the collection of fees for IFP prisoner litigants such that each prisoner must pay the full individual fee. *Id.* at 855-56. The court also determined that, reading the PLRA and Rule 20 together, § 1915(g) would require joint litigants to be held liable for strikes against their co-plaintiff's claims. The court articulated no concern that § 1915(g) conflicts with Rule 20 joinder. Rather, "[w]hen claims are related enough to be handled together, they are related enough for purposes of § 1915(g)." *Id.* at 855.

The Seventh Circuit's reasoning in *Boriboune* is compelling. The PLRA did not alter the text of Rule 20, or make any reference to the Rule. Lacking such an express reference,

17

the only way to conclude that the PLRA altered Rule 20 would be to determine that the later statute repealed the Rule by implication as to prisoner litigants.  This requires more than mere tension in applying the later law's provisions to the earlier.  "[R]epeals by implication are not favored and will not be presumed unless the intention of the legislature to repeal is clear and manifest."  *National Ass'n of Home Builders v. Defenders of Wildlife*, 127 S. Ct. 2518, 2532 (2007) (internal quotation marks and brackets omitted).  "An implied repeal will only be found where provisions in two statutes are in irreconcilable conflict, or where the latter act covers the whole subject area of the earlier one and is clearly intended as a substitute."  *Branch v. Smith*, 538 U.S. 254, 273 (2003) (internal citations and quotation marks omitted).

Since the PLRA does not even address permissive joinder, much less cover the whole subject area, we cannot conclude that the later statute repealed Rule 20 unless the two provisions are in irreconcilable conflict.  In interpreting the later statute, "[w]e will not infer a statutory repeal unless . . . such a construction is absolutely necessary in order that the words of the later statute shall have any meaning at all."  *National Ass'n of Home Builders*, 127 S. Ct. at 2532 (internal quotation marks, brackets, and ellipses omitted).

The plain language of § 1915(b)(1) can be read in complete harmony with Rule 20 by requiring each joined prisoner to pay the full individual fee.  As the Seventh Circuit

18

reasoned, taking "§ 1915(b)(1) at face value," the requirement for each prisoner to pay a full fee is simply one price that a prisoner must pay for IFP status under the PLRA. *Boriboune*, 391 F.3d at 856.[2]

Such an interpretation can also be read in harmony with § 1915(b)(3), which provides that "[i]n no event shall the filing fee collected exceed the amount of fees permitted by statute for the commencement" of a civil action or appeal. 28 U.S.C. § 1915(b)(3). Section 1915(b)(3) must be read in the context of § 1915(b) as a whole. Section 1915(b)(1) provides that a court must ultimately collect a full filing fee from a prisoner, and, where possible, must collect an initial portion of the fee up front. Section 1915(b)(2) establishes procedures by which a prisoner shall make monthly payments against the balance of the fee. Read in sequence, common sense indicates that § 1915(b)(3)

_____

[2]Although Judge Roth would have a court divide a single fee between joined plaintiffs, Judge Jordan agrees "that a plain reading of § 1915(b)(1) requires each prisoner to pay a full filing fee." Thus, a majority of the panel agrees on this point. Judge Jordan and I do not agree with Judge Roth's suggestion that Judge Jordan's view as to this issue does not count because he believes that, while joinder is available generally, the District Court was within its discretion to deny joinder in this case. The filing fee issue is clearly before us, and he and I are in agreement as to its resolution. We believe that case law regarding differing views of panel judges as to jurisdiction is not relevant here.

19

merely ensures that an IFP prisoner's fees, when paid by installment, will not exceed the standard individual filing fee paid in full. Nothing in § 1915(b) mentions joinder or indicates that Congress intended § 1915(b)(3) to serve as a bar to the collection of multiple individual fees from individual plaintiffs in a joint litigation.[3] Reading the PLRA as requiring each joined IFP litigant to pay a full individual filing fee by installment, and no more, harmonizes the PLRA with Rule 20, and internally harmonizes the various provisions of § 1915(b).

We are merely called upon in this case to determine how two laws should operate together. The two laws at issue accomplish independent and complementary purposes, which can and should coexist. As the Seventh Circuit noted, "[j]oint litigation does not relieve prisoners of any duties under the more recent statute." *Boriboune*, 391 F.3d at 854. The application of repeal by implication would undermine congressional goals. Moreover, it would expand repeal by implication into an everyday principle, since Congress routinely enacts legislation with provisions that do not neatly coexist with existing statutes.

---

[3]The final provision of the subsection, § 1915(b)(4), parallels § 1915(b)(3) in providing that, "In no event shall a prisoner be prohibited from bringing a civil action or" filing an appeal for failure to have sufficient assets to pay an initial fee. 28 U.S.C. § 1915(b)(4). Read together, §§ 1915(b)(3) and (4) are intended to *protect* an IFP prisoner's rights. This further suggests that Congress did not intend § 1915(b)(3) to be a vehicle for *denying* a prisoner's access to permissive joinder.

Sections 1915(b)(1) and (3) hardly convey a "clear and manifest" intent by Congress to repeal Rule 20, and constructing the PLRA so as to nullify Rule 20 is not "absolutely necessary."

We think that the Seventh Circuit was correct when it observed that the "three strikes" provision of § 1915(g) is not necessarily in conflict with Rule 20. If a plaintiff desires to join with other prisoners, he could face the prospect of being responsible for the strikes of others. We disagree with the District Court in the instant action that the issue would necessarily be resolved the other way – that is, that a joint litigant will necessarily avoid a strike under § 1915(g) because a prisoner would not be charged for the dismissal of his or her claim as long as the entire case was not dismissed. The question of precisely how strikes should be assessed in a joint prisoner litigation was not before the District Court and is not before us. However, when combined with a full filing fee requirement, § 1915(g) may actually dissuade joint litigation since a court could hold that, reading the PLRA and Rule 20 together, a plaintiff is accountable for the dismissal of a co-plaintiff's claims.

Thus, we conclude that the PLRA did not repeal Rule 20 joinder as to IFP prisoner litigants. Nothing in the PLRA speaks with sufficient clarity or creates an irreconcilable conflict, and the statute cannot be deemed to exclude IFP prisoner litigants from Rule 20 joinder as a matter of law.

21

## 2. Rule 20 and Conditions of Incarceration

In addition to the purported conflicts between Rule 20 and the PLRA, the District Court also relied on general conditions faced by inmate populations to conclude that joinder was unavailable. The Court noted several difficulties in multiple-prisoner litigations that were identified by other district courts in *Wasko v. Allen County Jail*, 2006 WL 978956 (N.D. Ind. April 12, 2006) and *Swenson v. MacDonald*, 2006 WL 240233 (D. Mont. Jan. 30, 2006). The difficulties identified by those courts were (1) "the need for each plaintiff to sign the pleadings, and the consequent possibilities that documents may be changes as they are circulated"; (2) "prisoners may seek to compel prison authorities to permit them to gather to discuss the joint litigation"; (3) "jail populations are notably transitory, making joint litigation difficult"; and (4) the possibility that coercion may affect the relations between the inmates. (App. 12.) The District Court concluded that these considerations made "joint litigation exceptionally difficult." (*Id.*) The Court did not address any considerations specific to the Plaintiffs in this action.[4]

---

[4]A review of the record suggests that, in fact, some of the impracticalities asserted by the District Court may not apply to the Plaintiffs in the current matter. For instance, there is no evidence that the prisoners had any difficulty securing all of the required signatures on the pleadings and the filings related to this appeal. Also, the ADTC is a relatively small facility with

(continued...)

22

Essentially, the District Court relied on arguments that prisoners should not be considered "persons" permitted to join under Rule 20. We do not agree. "The Supreme Court and this Court have repeatedly held that the Federal Rules of Civil Procedure, like any other statute, should be given their plain meaning." *Berckeley Inv. Group, Ltd. v. Colkitt*, 259 F.3d 135, 142 n.7 (3d Cir. 2001). The Court's "inquiry is complete if we find the text of the Rule to be clear and unambiguous." *Id.* (internal quotation marks omitted). Rule 20's use of the term "persons" is clear and unambiguous. Nothing in the Rule itself raises any hint that prisoners should not be included within the broad definition of persons capable of joining their claim pursuant to the Rule. Thus, the District Court's reliance on these extrinsic considerations rather than the plain language of Rule 20 was error.[5]

---

[4](...continued) approximately 600 inmates, suggesting that joint litigation by inmates of the facility may be manageable.

[5]Although the District Court made no mention of the specific conditions facing the instant prisoners, Judge Jordan believes that generalized difficulties of prisoner litigation  provided sufficient grounds for the District Court to deny joinder. While a judge may well identify credible reasons why joint litigation of prisoner suits might not generally be a good idea, such opinions cannot be used to defeat congressional intent by disregarding the plain language of Rule 20.

The District Court based its decision to deny joinder on an erroneous interpretation of Rule 20, and we therefore conclude that the Court abused its discretion in denying joinder to Appellants.[6]   Aside from correcting this error of law, however, our decision does not limit the District Court's broad authority with regard to joinder under Rule 20, which is, after all, discretionary.  In exercising its discretion, the District Court must provide a reasoned analysis that comports with the requirements of the Rule, and that is based on the specific fact pattern presented by the  plaintiffs and claims before the court. It is insufficient for a court to rely on general assumptions regarding the circumstances of incarceration.

---

[6]The District Court determined that Rule 20 joinder was unavailable to Appellants, and dismissed all but Hagan pursuant to Rule 21.  As an alternative argument, Respondents seek to frame our inquiry as a review of the District Court's discretionary power to dismiss under Rule 21, rather than a review of the Court's interpretation of Rule 20.  However, the Court dismissed the Plaintiffs only after concluding that they were precluded from joining under Rule 20.  Thus, the Court's incorrect interpretation of Rule 20 was dispositive, and we need not separately address the Court's authority under Rule 21.

### III. Class Certification

Appellants also argue that the District Court erred in denying their motion for class certification under Rule 23(b)(3). In their complaint, Appellants claimed that inmates of the ADTC were either subject to actual skin infections, or were subject to the threat of future injury due to deliberate indifference on the part of prison officials in failing to contain the contagion. The District Court denied class certification for failure of the named Plaintiffs to meet certain requirements of Rule 23(a).

This Court has the discretion to exercise jurisdiction over an interlocutory appeal denying class certification. Fed. R. Civ. P. 23(f); *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Ind.*, 259 F.3d 154, 163 (3d Cir. 2001). We have identified non-exclusive principles to guide our discretion, counseling us to exercise jurisdiction when denial of certification would effectively terminate a litigation, create excessive pressure to settle, or reach a novel or unsettled question of law. *Id.* at 164. In light of the fact that this matter will be remanded for resolution of the joinder issue, we find it appropriate to exercise our jurisdiction over the class certification issue also.

We review a district court's denial of class certification for abuse of discretion. *In re LifeUSA Holding Inc.*, 242 F.3d 136, 143 (3d Cir. 2001). A district court abuses its discretion when "its decision rests upon a clearly erroneous finding of fact,

25

an errant conclusion of law or an improper application of law to fact." *Danvers Motor Co., Inc.*, 543 F.3d at 147 (internal quotation marks omitted).

Rule 23(a) provides that members of a class may only sue on behalf of a class if (1) the class is so numerous that joinder is impractical; (2) there are common questions of law or fact; (3) the claims of the representative parties are typical of the class; and (4) "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Although the District Court's precise grounds for denying certification are not entirely clear, it appears that the Court determined that the Plaintiffs failed to satisfy the commonality, typicality, and adequacy requirements of 23(a).

The Court stated that "the claims of the representative party may not be typical of the claims of the class" because the purported class would include inmates that suffered life-threatening injuries, and inmates that suffered no physical injuries. (App. 13) The Court also reasoned that the treatment received by different members of the class could vary. "In light of the disparate factual circumstances of class members, especially the difference in regard to medical needs and injury," the Court determined that a class action was undesirable. (*Id.*) Furthermore, the Court stated that a prisoner proceeding *pro se* could not adequately represent a class of inmates.

26

The District Court's reasoning is problematic. In *Hassine v. Jeffes*, 846 F.2d 169 (3d Cir. 1988), this Court ruled that a district court erred in failing to certify a class of prisoners that alleged that they were all constitutionally injured by the conditions at their facility. The Court reasoned that, with regard to typicality and commonality,

> Rule 23 does not require that the representative plaintiff have endured precisely the same injuries that have been sustained by the class members, only that the harm complained of be common to the class, and that the named plaintiff demonstrate a personal interest or "threat of injury ... [that] is 'real and immediate,' not 'conjectural' or 'hypothetical.' "

*Id.* at 177 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)).

On the limited basis of the District Court's brief opinion, we fail to see how the Plaintiffs in this case failed to satisfy the requirements of *Hassaine*. Appellants alleged that all prisoners at the facility, including the named plaintiffs, were subject to the threat of an injury. The complaint squarely alleges that prison officials violated the Eighth Amendment by being "deliberately indifferent to the exposure of inmates to a serious, communicable disease," and that the amendment "also protects against future harms to inmates." (App. 27.) The District Court

27

failed to articulate why, at this early stage, this alleged threat of injury is insufficiently typical or common to allow Appellants' action to proceed as a class.

Moreover, we do not question the District Court's conclusion that *pro se* litigants are generally not appropriate as class representatives. *See Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir.1975) ("[I]t is plain error to permit [an] imprisoned litigant who is unassisted by counsel to represent his fellow inmates in a class action.") However, the District Court had expressly deferred consideration of the Plaintiffs' motion for appointment of counsel, finding that such a decision would be premature since the Defendants had not yet been served. We likewise find it premature for the District Court to conclude that Plaintiffs' representation of the class would be inadequate before the Court decided whether to appoint counsel. For these reasons, we conclude that the District Court abused its discretion in denying class certification.

## IV. Conclusion

The District Court's order denying joinder to the Appellants was based on an erroneous conclusion of law and will be REVERSED. The District Court also abused its discretion in concluding that Appellants could not proceed as a class, and the order denying class certification will be VACATED. We will REMAND the matter for further consideration consistent with this Opinion.

28

*HAGAN v. ROGERS*,  No. 07-1412

JORDAN, *Circuit Judge, Concurring in part and Dissenting in part*

The issues in this appeal are, first, whether prisoners seeking to proceed *in forma pauperis* under the Prison Litigation Reform Act ("PLRA" or the "Act"), 28 U.S.C. §§ 1915 *et. seq.*, may be joined under Rule 20 of the Federal Rules of Civil Procedure, and second, if so, whether joinder should be permitted in this case.  My colleagues answer the first question in the affirmative, and, though I have reservations about their interpretation of the PLRA, I agree with them on that.  They are, however, unable to agree with each other on the method for collecting the necessary filing fees associated with any jointly filed civil action or appeal.[7]  On this point, I agree with Judge Rendell that § 1915(b)(1) requires the collection of the full filing

---

[7]Because this action was initiated as a single claim, the issue of the appropriate fee arose for the first time when the parties jointly sought to pursue this appeal *in forma pauperis*.  While that motion was initially granted, the Clerk later vacated the order on the basis that "the issue of how to assess filing fees in multi-plaintiff cases is an open question in this circuit."  (App. at 143.)  We then directed the parties to address the manner in which fees are to be assessed for an appeal involving multiple prisoner-appellants.  The effect of any holding on the issue of fees, however, is not limited to fees on appeal but also applies to the fees due on initiation of a multi-prisoner civil action.

fee from each prisoner. Nevertheless, in the end, I part company with both of my colleauges on the decision to reverse the District Court's denial of joinder because I believe the District Court correctly determined that characteristics of the prison setting will generally make joinder under Rule 20 impracticable and that this case fits that general rule. I therefore respectfully dissent.[8]

Although I agree with the Majority that the PLRA does not repeal Rule 20 by implication, I write separately on this issue to explain why I view the more logical reading of §

---

[8]In addition to agreeing with the majority that there is no irreconcilable conflict between the PLRA and Rule 20, I also concur with the Majority's reasoning regarding our jurisdiction to consider this appeal. In addition, I agree with the Majority's conclusion that, on this record, it was premature to rule that a class could not be certified in this case. (Maj. Op. at 28.) I therefore agree that the District Court should not have denied class certification at this stage, and I concur in the judgment to that limited extent, though that does not imply that class certification must be granted, nor does it say anything about who, if anyone, could properly serve as class representative. It means only that the reasons given for denial are insufficient, as explained by the Majority.

1915(b)(3) as being inconsistent with joinder.[9] The PLRA arose out of a concern that restrictions in the *in forma pauperis* statute failed to adequately deter prisoners from filing frivolous lawsuits. *Para-Professional Law Clinic at SCI-Graterford v. Beard*, 334 F.3d 301, 303 (3d Cir. 2003) ("Congress enacted the PLRA in an apparent effort ... to discourage prisoners from filing frivolous lawsuits which strain the judiciary's scarce resources."). Under § 1915, when "a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). The statute also states that the filing fee collected in a prisoner action may not "exceed the amount of fees permitted by statute for the commencement of a civil action or an appeal of a civil action or criminal judgment." *Id.* § 1915(b)(3).

---

[9]My colleagues also express the view that there is no conflict between Rule 20 and §1915(g), the so-called "three strikes" provision. I question that conclusion because it seems more likely that, under the language of the PLRA, no litigant would be assessed a strike unless an action was dismissed in its entirety, thereby allowing a stack of frivolous claims to be balanced on a single meritorious claim. However, the issue of strike allocation was not before the District Court and is not before us. We therefore need not address it at this juncture.

Judge Rendell, adopting the position of the Seventh Circuit in *Boriboune v. Berge*, 391 F.3d 852 (7th Cir. 2004), concludes that § 1915(b)(1) and Rule 20 may be read in harmony by requiring each joined prisoner to pay a full filing fee. (Maj. Op. at 17-21.) I agree that a plain reading of § 1915(b)(1) requires each prisoner to pay a full filing fee. I find it much harder to agree that multiple prisoners can be joined under Rule 20 in a single suit and each be compelled to pay the full filing fee. That approach runs afoul of the emphatic mandate in § 1915(b)(3) that "in no event" may the fee collected in a prisoner case exceed that collected in any other civil action or appeal. As Judge Rendell sees it, common sense suggests that the ultimate concern of § 1915(b)(3) is that each prisoner not pay more than the full filing fee for any action, rather than that the total fee collected in a given case not exceed that collected in any other case. While I agree that § 1915(b)(3) can be read as she proposes, I remain convinced that the logic and language of the PLRA are in large measure inconsistent with joinder under Rule 20.

The best guide to Congressional intent is the Act itself. *See Disabled in Action of Pennsylvania v. Southeastern Pennsylvania Transp. Auth.*, 539 F.3d 199, 210 (3d Cir. 2008) ("We assume that Congress expresses its intent through the ordinary meaning of its language and therefore begin with an examination of the plain language of the statute.") (internal

32

quotation marks and citation omitted). Congress's use of the passive construction, "the fee *collected*," indicates that § 1915(b)(3) is not to be viewed solely on a prisoner-by-prisoner basis but that the fee for the case itself, in total, ought not exceed the standard fee in any similar action. "Our task is to give effect to the will of Congress, and where its will has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive." *Negonsott v. Samuels,* 507 U.S. 99, 104 (1993); *accord Abdul-Akbar v. McKelvie*, 239 F.3d 307, 313 (3d Cir. 2001) (en banc). The language of the PLRA is reasonably plain in this regard. It says, without qualification, that a full filing fee must be collected from a litigating prisoner and, again, that "*in no event* shall the fee collected exceed the amount of fees permitted by statute for the commencement of a civil action or an appeal of a civil action." § 1915(b)(1), (3) (emphasis added). Having multiple prisoners in a single suit, each paying a full fee creates an "event" that we are instructed should in no event be created. For example, in this case, collecting a full filing fee on appeal from each prisoner will result in a total fee of approximately $6300, far in excess of the $450 fee collected in the filing of any other civil appeal. As Judge Roth points out, that result "is incongruous with the relevant statutory scheme ... ."[10] (Concurring Op., ¶ 1.)

---

[10]Viewing §§ 1915(b)(3) and (4) as directed to an individual prisoner's ability to initiate an action, as suggested in Judge Rendell's opinion, supports the conclusion that the PLRA was

(continued...)

33

I am, however, unable to agree with Judge Roth's resolution of the fees conundrum because it appears incompatible with the plain language of the PLRA. The Act is phrased in the singular: "if *a* prisoner brings a civil action or files a civil appeal, *the* prisoner shall be required to *pay the full amount* of a filing fee." §1915(b)(1) (emphasis added). While Judge Roth reads § 1915(b)(1) with stress on the "a" of "a filing fee," *see Talley-Bey v. Knebl*, 168 F.3d 884, 885 (6th Cir. 1999), such a reading dismisses the rest of the same sentence, which obligates the filing party, not a collective of filing parties, to pay the full amount of any filing fee, not a portion of it. Indeed, when Judge Roth says her solution would satisfy § 1915(b)(1) "because each prisoner would pay *a* full filing fee" (Concur. Op. at 3; original emphasis), a reader must stumble over the word "full." There is nothing "full" about paying a partial fee.

Congress's choice of language in §§ 1915(b)(1) and (b)(3) makes sense when we recall that the individual responsibility of each prisoner to pay his or her own way in

---

[10](...continued)
meant to protect prisoners from punitive filing fees, but it implies nothing of an intention to foster joint actions by prisoners. Hence, in the face of Judge Roth's accurate observation about the incongruity of the result here, Judge Rendell's appeal to common sense is not entirely persuasive.

34

litigation is central to the purpose of the PLRA. *See Abdul-Akbar*, 239 F.3d at 312 ("In enacting the PLRA, Congress concluded that the large number of meritless prisoner claims was caused by the fact that prisoners easily obtained [*in forma pauperis*] status and hence were not subject to the same economic disincentives to filing meritless cases that face other civil litigants."). The "modest monetary outlay" of the full filing fee is intended to "force prisoners to think twice about the case and not just file reflexively. Prisoners will have to make the same decision that law-abiding Americans must make: Is the lawsuit worth the price?" *See* 141 Cong. Rec. S 7, 498-01, 526 (May 25, 1995) (Statement of Sen. Kyl). Reading the PLRA in a way that permits individual prisoner-plaintiffs to circumvent the required monetary outlay is, it would seem, a betrayal of the statute's purpose, and can only undermine Congress's effort to stem the tide of frivolous litigation.[11]

---

[11] It is noteworthy that the statutory construction problems posed by applying Rule 20 in the face of the strictures of §§ 1915(b) and (g) do not arise in the context of consolidation of suits under Federal Rule of Civil Procedure 42(a). The difference between joinder under Rule 20 and consolidation under Rule 42(a) is not a distinction without a difference. Under the latter rule, before there is a consolidation there are, by definition, separate actions, for each of which a filing fee is paid and each of which must stand on its own merit. *See Johnson v. Manhattan Ry. Co.,* 289 U.S. 479, 496-97 (1933); *In re Community Bank of Northern Virginia*, 418 F.3d 277, 298 n.12

(continued...)

35

Despite my views regarding the better reading of §
1915(b), I agree with my colleagues that, for us to decide that
Rule 20 does not apply in prisoner cases, we must first conclude
that the PLRA repealed the Rule by implication, at least to the
limited extent that the two cannot both be properly applied in the
context of prisoner litigation. As the Majority points out, repeal
by implication requires that the "intention of the legislature to
repeal [is] clear and manifest." *Hawaii v. Office of Hawaiian
Affairs*, 129 S.Ct. 1436, 1445 (U.S. Mar. 31, 2009) (citation
omitted). Where possible, statutes that appear to conflict should
be read to give effect to both. *See Ruckelshaus v. Monsanto
Co.*, 467 U.S. 986, 1018 (1984) ("Where two statutes are
capable of co-existence, it is the duty of the courts, absent a
clearly expressed congressional intention to the contrary, to
regard each as effective.") (internal quotations and citations
omitted). Although I cannot wholly embrace Judge Rendell's
reading of the PLRA, it is at least a plausible reading of the
statute. Section 1915(b)(3) may legitimately be read so that the

[11](...continued)
(3d Cir. 2005) (affirming *Johnson* as the "authoritative"
statement on the law of consolidation") (citation omitted). Rule
42(a) stands as an independent and solid foundation for bringing
efficiencies to related prisoner lawsuits, as district courts may,
on a case-by-case basis, deem fit. *See Young v. City of Augusta*,
59 F.3d 1160, 1168-69 (11th Cir. 1995) (when the "core issue of
liability" was "the same in both cases[,]"consolidation of actions
involving prison deliberate indifference claims would be
warranted).

36

"in no event" language is limited to a single-plaintiff suit, thereby ensuring nothing more than that, when a filing fee is collected from an *in forma pauperis* plaintiff in installments, the sum of the fee collected from that plaintiff is no more than that collected in any other civil action. Because that reading would give full effect to both the PLRA and Rule 20, I am unable to conclude that there is an irreconcilable conflict that would warrant a repeal by implication. I therefore join my colleagues in holding that joinder under Rule 20 is not inconsistent with the PLRA, at least not as a matter of statutory interpretation.

Of course, there are, as the District Court found here, a number of reasons why allowing prison inmates to jointly litigate may generally be unwise. Beyond both the parsing of language in the PLRA and abstract thoughts about the Federal Rules of Civil Procedure, there remains a world of practical difficulty in dealing with legal claims pressed by prisoners. Thus, even though joinder under Rule 20 is not prohibited by the PLRA, I am unable to agree with the Majority's conclusion that the District Court was wrong to deny the motion for joinder in this case.

The District Court's well-reasoned opinion identifies several issues that deserve greater respect than we have given

37

them.  If joinder of prisoners is freely permitted, there will be inevitable demands to allow meetings and other communications about litigation strategy.   Trying to coordinate prisoner schedules and monitor such interactions, while dealing with the virtually certain insistence that prisoner discussions of privileged matters must not be monitored, will place obvious and onerous demands on prison administrators, not to mention making simple safety and disciplinary measures more difficult to enforce, since every added layer of legalism adds friction to the administrative process.  Society accepts a certain degree of such friction, because efficiency is not the sole or the primary goal of our penal system.  But we should be extremely cautious about adding to the inefficiency, particularly when the rules we impose are susceptible to abuse by savvy jail-house lawyers.

The realities of prison operation, with which district court judges become familiar through the many *pro se* prisoner cases filed each year, are discounted by the Majority's suggestion that "joint litigation by inmates of the [Adult Diagnostic and Treatment Center] may be manageable" because the ADTC is "a relatively small facility with approximately 600 inmates ... ." (Maj. Op. 22-23 n.4.)  Even at a comparatively small facility, permitting inmates to congregate and having to monitor materials passed between them, all while maintaining the safety of other inmates and prison personnel, would be no small feat.

38

And, of course, that says nothing of the impact our decision will have on not-so-small institutions.

The transitory nature of the prisoner population is another factor identified by the District Court as problematic for multi-prisoner case administration. Repeated questions about standing and mootness will arise from an ever-changing list of plaintiffs, and ordinary logistics will be troublesome. Even in this case, with a moderate number of plaintiffs, the shifting prison population has proven a challenge. By the time the case was argued to us, only five of the fourteen plaintiffs were still in the Adult Diagnostic and Treatment Center, while eight others were no longer in the New Jersey correctional system at all. While keeping tabs on those outside the prison system may be easier in this case because formerly incarcerated plaintiffs are required to register as sex offenders, there is no guarantee that released plaintiffs will be locatable under other circumstances. As our own docket reflects, hunting for plaintiffs imposes administrative burdens. *See* Docket 12/24/08 and 1/09/2009 letters from the Clerk of the Third Circuit to the ADTC (seeking forwarding information for released and deceased inmates for purposes of notification of oral argument).

39

Perhaps of greatest concern is the addition of a new subject for intimidation and coercion within the prison setting. Even well-run prisons can present a dangerous environment, in which freedom of choice is constrained not just by official means. Inmates may be compelled through threats, physical force, or more subtle forms of duress to join lawsuits in which they would otherwise have no interest. Climbing onboard a complaint about prison conditions may seem like an excellent idea when the alternative is presented by a fellow inmate with a record for assault.

The concerns behind the District Court's decision are not a fanciful parade of horribles. They reflect a seasoned judge's view of predictable outcomes and an understanding that treating incarcerated criminals as if they had nothing to gain by gaming the litigation system is systemically bad both for the courts and the prisons. Thus, I am not inclined, as the Majority is, to say that a general statement of opposition to Rule 20 joinder in prisoner cases constitutes an abuse of discretion. Moreover, while the District Court did not fully explain its application of that general rule to the facts of this case, its denial of joinder was sufficiently tied to the present particulars that we should recognize the decision as fairly disposing of the case on its facts

and not simply as announcing "general assumptions regarding the circumstances of incarceration."[12] (Maj. Op. at 24.)

The District Court produced a thoughtful and, to me at least, thoroughly persuasive opinion in this regard. It's ruling was not an abuse of discretion. Consequently, except to the extent noted, I dissent.

---

[12]The District Court did say, "Plaintiffs here have asserted claims that require individualized screening ... . The adequacy of the claim alleged by each Plaintiff is dependent upon his individual medical need and the behavior of prison officials with respect to that individual Plaintiff." (App. at 12.) The Court thus appears to have been concerned not merely with prisoner litigation in the abstract but rather with problems it foresaw in the circumstances presented by this case.

41

*HAGAN v. ROGERS*, No. 07-1412

**ROTH**, <u>Circuit Judge</u>, <u>Concurring in Part and Dissenting In Part</u>:

Judge Rendell correctly holds that we have jurisdiction over this case and that prisoners may join cases under Federal Rule of Civil Procedure 20. I disagree, however, with her holding that each prisoner in a joint-prisoner action must individually pay the entire appellate-docketing fee. Because that holding is incongruous with the relevant statutory scheme, I respectfully dissent from that portion of her opinion. I would require that each prisoner pay an apportioned amount of a single appellate-docketing fee.

Judge Rendell's holding is incorrect because it violates 28 U.S.C. § 1915(b)(3) and misconstrues 28 U.S.C. § 1915(b)(1). The holding violates § 1915(b)(3), which states that "[i]n no event shall" a court collect a filing fee that "exceed[s] the amount of fees permitted by statute for . . . an appeal of a civil action." 28 U.S.C. § 1915(b)(3). Section § 1915(b)(3) thus adopts a sister statute's cap on appellate-docketing fees; 28 U.S.C. § 1913 is that statute. In § 1913, Congress provides that "[t]he fees and costs to be charged and collected in each court of appeals shall be prescribed . . . by the Judicial Conference of the United States." *Id.* § 1913. The Judicial Conference, in turn,

prescribes a $450 fee "for docketing a case on appeal." Judicial Conference Schedule of Fees, *Court of Appeals Miscellaneous Fee Schedule* ¶ 1. Importantly, the Fee Schedule notes that "parties filing a joint notice of appeal in the district court are required to pay *only one fee*." *Id.* (emphasis added). Thus, in contrast to the Judge Rendell's holding, "each joined prisoner" cannot "pay the full individual fee." (Rendell, J., Op. II.B.1.)

In the case before us, the fourteen prisoners cannot each pay $450 (yielding a $6300 intake) because "parties filing a joint notice of appeal . . . are required to pay only one [$450] fee." *See* Judicial Conference Schedule of Fees, *Court of Appeals Miscellaneous Fee Schedule* ¶ 1

Judge Rendell's holding violates § 1915(b)(3) because she misconstrues § 1915(b)(1). She believes that the "plain language of § 1915(b)(1)" requires each prisoner to "pay the full individual fee." (*See* Rendell, J., Op. II.B.1.) But § 1915(b)(1) does not impel that result. It, instead, requires each party—or each prisoner—"to pay the full amount of *a* filing fee." 28 U.S.C. § 1915(b)(1) (emphasis added). This subtle difference, Congress's use of "a" instead of "the," illustrates that the $450 fee requirement varies depending on whether a single party—or a single prisoner—or multiple parties—or multiple

43

prisoners—bring suit. When one prisoner brings suit, he satisfies § 1915(b)(1) by paying $450; when multiple prisoners bring suit under Federal Rule of Civil Procedure 20, they satisfy § 1915(b)(1) by paying the apportioned amount of $450. In either situation, the full amount of *a* filing fee is paid. Each prisoner here thus should pay a one-fourteenth share of $450.

The holding in the case that Judge Rendell relies on also violated § 1915(b)(3) and misconstrued § 1915(b)(1). The Seventh Circuit Court of Appeals has held that prisoners can proceed jointly if they satisfy Rule 20. *See Boriboune v. Berge*, 391 F.3d 852, 855 (7th Cir. 2004). But when it turned to the fee-assessment issue, the Seventh Circuit concluded that § 1913(b)(1) makes it "each prisoner's responsibility to pay *the* full fee." *See id.* at 856 (emphasis added). The Seventh Circuit, however, did not analyze §1915(b)(3). *See id.* at 855–56.

The Sixth Circuit Court of Appeals, by contrast, supports

assessing an apportioned amount of filing fees in joint-prisoner actions. The Sixth Circuit addressed the issue of how to assess fees and costs in a two-prisoner suit. *See Talley-Bey v. Knebl*,

44

168 F.3d 884, 885 (6th Cir. 1999).  It affirmed a district court's division of costs and fees between two prisoners.  *Id.* at 887.  It noted that "any fees and costs that a district court or that we may impose must be *equally divided* among all the participating prisoners."  *Id.* (emphasis added).

I would assess an apportioned fee among the fourteen prisoners to satisfy the $450 appellate-docketing fee.  This would satisfy both § 1915(b)(1), because each prisoner would pay *a* full filing fee, and § 1915(b)(3), because the prisoners together would pay only one $450 fee.  I therefore dissent from that part of Judge Rendell's opinion that holds that each prisoner must pay the full $450 filing fee.[13]

---

[13]Moreover, I submit that there is no judgment by the Court on this issue because only one eligible judge has voted to require each prisoner-plaintiff in a joint action to pay the full filing fee. As the motions panel noted, resolution of the fee issue requires the resolution of permitting joinder in this case. (*See* J.A. at 152.)  Because Judge Jordan would not permit joinder in this case, he should not be able to vote on the fee required in a Rule 20 joint action by prisoners. *See In re Market Square Inn, Inc.*, 978 F.2d 116, 121 (3d Cir. 1992) (stating that only the two members of the panel who held that appellate jurisdiction existed voted on the merits of the district court's decision). Because the two eligible judges disagree, the Court has no

(continued...)

[13](...continued)
judgment or holding on the issue of how to assess fees. Any statements by Judge Jordan in his separate opinion concerning fees are merely dicta.