HAINES & KIBBLEHOUSE, INC.

v.

BALFOUR BEATTY CONSTRUCTION, INC.

Civil Action No. 08–5505.

United States District Court, E.D. Pennsylvania.

June 1, 2011.

Paul A. Logan, Powell Trachtman Logan Carrle, et al., King of Prussia, PA, for Haines & Kibblehouse, Inc.

Kevin J. McKeon, Watt Tieder Hoffar & Fitzgerald LLP, McLean, VA, for Balfour Beatty Construction, Inc.

## MEMORANDUM

DALZELL, District Judge.

Plaintiff Haines & Kibblehouse, Inc. (a Pennsylvania corporation) ("H & K") seeks declaratory relief and judgment in this diversity action against Balfour Beatty Construction, Inc. (a Delaware corporation with its principal place of business in Atlanta, Georgia) ("Balfour") in an amount in excess of $1 million. Compl. ¶ 143, 150, 158, 165, 178. Balfour moves to dismiss the case for failure to state a claim and/or to stay litigation pursuant to Fed.R.Civ.P. 12(b)(6) and Fed.R.Civ.P. 12(b)(7).[1]

As will be seen, given the unusual procedural posture, we must embark on an extended analysis of relatively arcane areas of law in order to decide this motion.

## I. *Factual Background*

Balfour was the general contractor for the Commonwealth of Pennsylvania's Department of Transportation ("PennDOT") for the construction of the Route 222 Bypass project (the "Project"). Compl. ¶ 13. On March 15, 2004, Balfour entered into a contract with PennDot to furnish work, labor, materials and services for the construction of the Project. *Id.* ¶ 15. Balfour's contract with PennDot involved about $57.7 million (the "Prime Contract"). *Id.* ¶ 16. On April 21, 2004, Balfour entered into a subcontract with H & K in the initial amount of $13,399,897.20 (the "Subcontract"). *Id.* ¶ 17. The Prime Contract included a special provision for project milestones. *Id.* ¶ 18.

The special provision required that all Project construction would be completed on or before July 7, 2006 or Balfour would be subject to PennDot's assessment of road user liquidated damages. *Id.* ¶ 19. Because PennDot did not issue the "Notice to Proceed" on the Project by the date the Prime Contract anticipated, PennDot granted a seventy-three-day extension to the Project milestone date. *Id.* ¶ 21. This extension revised the Project milestone date from July 7, 2006 to September 19, 2006. *Id.* ¶ 22.

H & K avers that Balfour knew that if Balfour failed to complete the predecessor work and did not provide H & K with unrestricted access to the worksite, H & K could not complete the work it was contracted to do and this would result in H & K's increased costs and expenses for which

---

1. Defendant originally moved to dismiss the complaint on December 2, 2008 when the case was pending before our late colleague, Judge Thomas M. Golden. *See* Memorandum of Law in Support of Balfour's Motion to Dismiss ("MTD1"). H & K responded on January 1, 2009. *See* H & K's response ("Pl. MTD1 Resp."). Balfour replied a month later. ("Def. MTD1 Repl."). Almost two years elapsed before the Chief Judge reassigned this case to us, following Judge Golden's death. We denied the motion to dismiss without prejudice and ordered the defendant to file a renewed and updated motion to dismiss. Relying in large part on their original motion to dismiss, defendant filed a renewed motion. *See* Brief in Support of the Amended Motion to Dismiss and/or Stay Litigation ("MTD2"). H & K responded relying in large part on its original response ("Pl. MTD2 Resp."). Defendant thereafter replied ("Def. MTD2 Repl."). Because the parties both rely on their previous motions and responses, this Memorandum addresses the arguments presented in both sets of motions to dismiss, the responses thereto, and the replies.

Balfour would be held accountable. *Id.* ¶ 36. H & K also avers that at no time prior to entering into the Subcontract did Balfour inform H & K that Balfour would be making unilateral changes to the sequence or durations of predecessor work that would directly affect H & K's work, but, instead, expressly and impliedly agreed "to efficiently progress the work." *Id.* ¶ 43 [*sic*].

H & K claims that Balfour "failed to commence, prosecute and complete the predecessor activities" in the prescribed sequences and within the specific timeframe agreed to with H & K and upon which H & K based its pricing. *Id.* ¶ 63. When Balfour notified H & K to proceed with its subcontract work, Balfour had not completed the predecessor work and had not yet procured the materials to complete the work H & K agreed to do. *Id.* ¶ 65. H & K claims that Balfour's failure to complete the predecessor work with diligence and with sufficient manpower and equipment, as well as its denial of full access to the site to H & K interfered with the planned sequence of operations by H & K and caused H & K to incur additional costs. *Id.* ¶ 68.

As of November of 2005, the Project was significantly behind schedule, the necessary predecessor work needed for H & K's placement of subbase and paving remained incomplete, and Balfour allegedly had made many unilateral changes to the schedule and sequence for the remaining work. *Id.* ¶ 92. Although the Project was supposed to be completed in late 2006, it was not completed until late 2007. *Id.* ¶ 96. Balfour has not yet fully paid H & K for the impacts of its poor scheduling on H & K's work. *Id.* ¶ 98. H & K claims that Balfour has also failed to make a claim to PennDot for the increased costs of H & K completing its work, including, but not lim-ited to, the increase in the unit prices for the work H & K performed.[2] *Id.* ¶ 99.

H & K believes that as of September 19, 2006 PennDot began assessing liquidated damages against Balfour. *Id.* ¶ 111. PennDot never assessed damages against H & K. *Id.* ¶ 113. H & K estimates that the minimum impact of Balfour's failings on H & K's work exceeded ten million dollars. *Id.* ¶ 117.

## II. *Procedural History*

The crux of this motion to dismiss will be found in the relationship between H & K and the courts rather than the relationship between the parties. On September 18, 2006, H & K filed a complaint against Balfour in the Montgomery County Court of Common Pleas. Balfour removed that case to federal court at C.A. No. 06–4807[3] and filed a motion to dismiss. Judge Golden dismissed without prejudice all of H & K's claims except H & K's claim for declaratory relief. Judge Golden remanded that claim back to state court on June 7, 2007. In doing so, Judge Golden relied upon Balfour's Subcontract-based defenses to the action, holding that:

> The plain meaning of Article 2.2.20 is that any claim that the subcontractor (Plaintiff) has for performing extra work or arising out of a delay or any other claim, *whether it be against PennDot or the Contractor (Defendant)* must first be compensated by the Owner (PennDot) to the Contractor (Defendant) before Plaintiff can bring suit against the Defendant.

*Haines & Kibblehouse, Inc. v. Balfour Beatty Constr., Inc.*, No. 06–4807, slip. op. at 4 (E.D.Pa. Jun. 7, 2007) (we shall refer to this case hereinafter as *"Haines I"*) (emphasis in original). H & K filed a motion for reconsideration of that Order,

---

**2.** Balfour disputes this contention. This dispute will be canvassed at length below.

**3.** As noted, the case was originally assigned to the late Judge Golden.

which Judge Golden denied on July 27, 2007. *Haines I*, slip. op. at 1 (Jul. 27, 2007). Judge Golden also in that Order denied H & K's request to certify the Court's Memorandum Opinion for interlocutory appeal. *Id.*

H & K nevertheless on August 22, 2007 filed a Notice of Appeal from Judge Golden's July 27, 2007 Order in the hope of standing on its complaint and securing appellate review of the four counts that Judge Golden dismissed without prejudice. MTD1, Ex. 5 (Letter brief of Sept. 5, 2007 in C.A. No. 07–3520 (3d Cir.)). H & K declared that "there is no way for H & K to cure the 'defect' that the District Court found in the Complaint" because the condition precedent, as Judge Golden defined it, "will never be achieved." *Id.* at 3. Thus, H & K contended to the Court of Appeals that "H & K must stand on the allegations in the Complaint and the order denying the Motion for Reconsideration of the June 5, 2007 Order must be considered a final order." *Id.* at 5. On January 30, 2008, our Court of Appeals issued an order providing that although it was not appropriate at that time to dismiss the case based on a jurisdictional defect, that view did "not represent a finding that the Court has jurisdiction to hear the appeal in this case." Pl. MTD1 Resp., Ex. H (Order dtd. Jan. 30, 2008 in C.A. No. 07–3520 (3d Cir.)). The parties instead were ordered to address the effect of 28 U.S.C. § 1447(d)[4] on the Court's appellate jurisdiction. *Id.*

Thereafter—but before our Court of Appeals set a briefing schedule—the parties were obliged to participate in the Third Circuit's mandatory mediation program. Pl. MTD2 Resp. at 6 n. 6. The mediation

did not succeed. *Id.* The Mediation Program Director, however, did not inform the Case Manager that the mediation had failed, *id.*, and so a briefing schedule did not promptly issue. Pl. MTD2 Resp., Ex. K (September 25, 2008 correspondence from Paul A. Logan, Esq., to Joseph A. Torregrossa, Esq.). H & K pressed our Court of Appeals to issue a scheduling order, which it ultimately did on September 29, 2008. *Id.*, Ex. K; MTD1, Ex. 10.

H & K claims that before the briefing schedule could issue, it discovered that Balfour had failed to include H & K's claim in its Board of Claims complaint, despite Balfour's representations that it would include H & K's claims in that complaint. Pl. MTD2 Resp. at 6 n. 7. Balfour indeed filed an amended complaint in the Board of Claims on November 9, 2007. *Id.*, Ex. N. H & K asserts that, as with the original complaint, Balfour's amended complaint to the Board of Claims also failed to mention H & K by name or include any of its claims. *Id.* at 7. On April 29, 2008, PennDot's litigation counsel, Jeffrey W. Davis, Esq., confirmed to H & K's counsel that the pleadings failed to identify any affirmative subcontractor claims, and PennDot invited Balfour to provide clear and specific evidence that Balfour presented any of H & K's claims to PennDot. *Id.*, Ex. M.

H & K avers that once it learned from PennDot's counsel that Balfour had indeed not included its claims in Balfour's amended complaint to the Board of Claims, it informally sought to "withdraw" its appeal.[5] MTD1, Ex. 8, 10; Pl. MTD2 Resp., Ex. O.

H & K did not do this until November 5, 2008, one day *after* it had filed a new

---

**4.** 28 U.S.C. § 1447(d) reads, "An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was

removed pursuant to section 1443 of this title shall be reviewable by appeal or otherwise."

**5.** H & K merely sent a two-sentence letter to the "Office of the Clerk". *See* MTD2 Resp., Ex. O.

complaint in the Court of Common Pleas of Montgomery County. *See generally* plaintiff's complaint. As Balfour would not consent to such a "withdrawal" of H & K's appeal, it instead moved to dismiss H & K's appeal on December 3, 2008. Pl. MTD2 Resp., Ex. P. In response, on December 17, 2008 H & K moved to voluntarily dismiss its appeal. *Id.*, Ex. Q. On January 22, 2009, our Court of Appeals granted H & K's motion to voluntarily dismiss its appeal. *Id.*, Ex. R (Ord. of Jan. 22, 2009 in C.A. No. 07–3520 (3d Cir.)).

Meanwhile, Balfour removed H & K's second state court action to this court on November 24, 2008 ("*Haines II*"). This second complaint had the same parties, the same claims, and involved exactly the same set of alleged facts as the first action. Balfour promptly filed a motion to dismiss the complaint based, in part, on claim preclusion. Judge Golden heard oral argument on the motion to dismiss but did not rule on it before he died. *Haines II* was then transferred to our docket. As noted, given the long delay and the tortured history in the Court of Appeals, we denied the motion to dismiss without prejudice and afforded Balfour the right to file an amended motion to dismiss. Balfour thereafter filed an amended motion to dismiss and/or stay the litigation, which we now address.

### III. *Analysis*

Balfour moves to dismiss this action pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim. It also moves under Rule 12(b)(7) for failure to join an indispensable party. In the alternative, Balfour moves to stay this action pending resolution of the dispute between it and PennDot. H & K responds that its discovery that Balfour had not included its claims in its amended complaint to the Board of Claims was a "watershed development" in the context of H & K's Third Circuit appeal and its Montgomery County remanded matter because it showed that the condition precedent Judge Golden articulated had not been met and this "eviscerated the factual underpinnings of the June 2007 Order," thereby rendering that Order moot. Pl. MTD2 Resp. at 7.

### A. *Defendant's Rule 12(b)(6) Motion to Dismiss* [6]

■ Balfour argues that H & K has failed to state a claim upon which relief

---

**6.** To survive a Rule 12(b)(6) motion, a party's factual allegations must raise a right to relief above the speculative level, and a complaint must allege facts suggestive of illegal conduct. *Bell Atlantic v. Twombly*, 550 U.S. 544, 563 n. 8, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir.2008) (citing *Twombly* ). The Supreme Court recently clarified the *Twombly* standard in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), where it held that a complaint must contain sufficient factual matter to state a claim for relief that is "plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (internal quotations omitted).

A claim has facial plausibility when the plaintiff pleads facts sufficient to allow the court to "draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* The plausibility standard is not as demanding as a "probability requirement," but it does oblige a plaintiff to allege facts sufficient to show that there is more than the mere possibility that a defendant has acted unlawfully. *Id.* (internal quotations omitted).

*Iqbal* established two principles that now underlie the Rule 12(b)(6) inquiry. First, although a court must accept as true the factual allegations in a complaint, this does not extend to legal conclusions. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Second, a complaint must state a plausible claim for relief to survive a motion to dismiss. *Id.* at 1950. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

can be granted because *Haines II* is barred by claim preclusion. Should we not find that the entire action is barred by claim preclusion, Balfour further argues that H & K is barred by judicial estoppel from claiming that Judge Golden's July 27, 2007 Order was not final. Finally, Balfour argues that if we do not find that the action is thus barred, there are alternative, independent reasons why H & K's complaint must be dismissed.

### 1. *Claim Preclusion*

Balfour contends that H & K's second action is barred by the principle of claim preclusion because it is duplicative of the first action. There is no doubt that this action is between the same two parties, on the same Subcontract, for the same Project. *Haines II* requests the same damages through the same factual allegations and most of the same legal theories, and includes five counts that are largely indistinguishable from the five counts alleged in *Haines I*. MTD1 at 13.

Balfour argues that by standing on its complaint in the first action, H & K intentionally converted the July 27, 2007 Order into a final judgment in order to obtain immediate appellate review. *Id.* Thus, even though the Court of Appeals ultimately allowed H & K to voluntarily dismiss the first appeal, Balfour argues that H & K cannot now claim that there was never a final order in *Haines I*. *Id.* H & K responds that Judge Golden's Order was never made final because our Court of Appeals granted its motion to voluntarily dismiss the appeal before definitively hold-ing that it had jurisdiction to hear the appeal.

■ Although our Court of Appeals has not determined whether state or federal preclusion analysis applies in successive-diversity proceedings, it has suggested that it need not decide this issue because the holding would be the same under either state or federal law. *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 962–63 (3d Cir.1991). "The doctrine of res judicata protects litigants from the burden of relitigating an identical issue with the same party or his privy and promotes judicial economy by preventing needless litigation." *Lewis v. Smith*, 361 Fed.Appx. 421, 423 (3d Cir.2010) (internal quotation marks omitted).

■ The doctrine of claim preclusion has three elements: (1) a final judgment on the merits must have been rendered in a prior suit; (2) the same parties or their privies must have been involved in both suits; and (3) the subsequent suit must have been based on the same cause of action as the original. *Lubrizol*, 929 F.2d at 963. Claim preclusion bars not only subsequent litigation of issues decided in the first proceeding, but also bars issues that could or should have been litigated in the first proceeding. *Selkridge v. United of Omaha Life Ins. Co.*, 360 F.3d 155, 172 (3d Cir.2004) (holding that if the three factors of claim preclusion are present, a claim that was or could have been raised previously must be dismissed as precluded).

■ In considering whether to dismiss a complaint on the basis of claim preclusion,

---

If the well-pleaded facts allege, but do not "show" more than the mere possibility of misconduct, then the pleader is not entitled to relief within the meaning of Rule 8(a)(2). *Id.*

In deciding a motion to dismiss, "courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim. A document forms the basis of a claim if the document is 'integral to or explicitly relied upon in the complaint.'" *Lum v. Bank of America*, 361 F.3d 217, 222 n. 3 (3d Cir.2004) (internal citations omitted).

"[w]e [do] not apply this conceptual test mechanically, but focus on the central purpose of the doctrine, to require a plaintiff to present all claims arising out [of] the same occurrence in a single suit." *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 260 (3d Cir.2010) (internal quotation marks omitted). "In so doing, we avoid piecemeal litigation and conserve judicial resources." *Id.*

Here, there is no question that the same parties were involved in both suits. In addition, this suit is based on the same cause of action upon which the first suit was based. H & K and Balfour agree on these points. The only question remaining is whether the events that followed Judge Golden's July 27, 2007 Order rendered that Order "final" for the purposes of claim preclusion.

■ Generally, a dismissal without prejudice does not represent a final judgment on the merits and is not appealable. *Bethel v. McAllister Brothers, Inc.*, 81 F.3d 376, 381 (3d Cir.1996). "Where, however, the plaintiff cannot cure the defect in the complaint or elects to stand on the complaint without amendment, the order becomes final and appealable." *Id.*

When H & K filed its notice of appeal, our Court of Appeals ordered the parties to address the effect of 28 U.S.C. § 1447(d) on its appellate jurisdiction. Pl. MTD2 Resp., Ex. H. It also cautioned that "[t]his order does *not* represent a finding that the Court has jurisdiction to hear the appeal in this case." *Id.* (emphasis in original).

Balfour argues that H & K "converted" the July 27, 2007 Order from an otherwise non-final judgment to a "final and appealable" decision in order to invoke the jurisdiction of our Court of Appeals. MTD1 at 17. Balfour cites *Bethel v. McAllister Brothers, Inc.*, 81 F.3d 376, 381 (3d Cir. 1996), *Garber v. Lego*, 11 F.3d 1197, 1198 n. 1 (3d Cir.1993), and *Borelli v. City of*

*Reading*, 532 F.2d 950 (3d Cir.1976), in support of its contention. But those cases are distinguishable.

In *Bethel* and *Garber*, our Court of Appeals contemplated its jurisdiction before either reaching the merits or dismissing the appeal. If Balfour's argument were correct, then in *Bethel* and *Garber* our Court of Appeals would have simply noted that the appellant had invoked appellate jurisdiction and moved on from there. But that is not what happened. In each case, our Court of Appeals carefully considered whether it had jurisdiction before determining that it did and *then* decided the appeal on the merits. *Borelli* is distinguishable because there the plaintiff did not elect to stand on her complaint.

In *Hagan v. Rogers*, 570 F.3d 146, 151 (3d Cir.2009), our Court of Appeals considered earlier cases where it had held that a plaintiff had elected to stand on its complaint. The Court noted that in *Frederico v. Home Depot*, 507 F.3d 188, 192 (3d Cir.2007), it had decided that the plaintiff had elected to stand on her complaint "where at no time during the proceedings did she seek to correct the purported pleading deficiencies, but instead repeatedly asserted that her complaint was sufficient as filed." *Hagan*, 570 F.3d at 151. *Hagan* also noted that it had jurisdiction "when a plaintiff did not amend his dismissed complaint within the 30 days allotted by the district court." *Id.* (in reference to *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 n. 5 (3d Cir.1992)). The Court also considered that it had held that certain plaintiffs "elected to stand on their dismissed claims after they renounced, by letter briefs filed with this Court, any intention to reinstitute proceedings against the defendants at issue." *Id.* (referring to in *Tiernan v. Devoe*, 923 F.2d 1024, 1031 (3d Cir.1991)).

In *Hagan* itself, the Court found that none of the plaintiffs amended their complaints within the thirty days the District Court afforded. In addition, all of the plaintiffs joined in the appeal and there was "no evidence that any ever wavered from their argument that they should be permitted to join under Rule 20." *Id.* Thus, the Court found that the circumstances confirmed that the appellants stood on their initial complaint. *Id.* Indeed, just last week the Court in *Boretsky v. Governor of N.J.*, 2011 WL 2036440, *2 (3d Cir. May 25, 2011), held that it was "satisfied that the plaintiffs' *actions* demonstrated that they elected to stand upon their original complaint" (emphasis added).

■ We must therefore examine H & K's actions to determine whether our Court of Appeals's jurisdiction had attached. Here, H & K told our Court of Appeals that it was electing to stand on its complaint. But then, before our Court of Appeals had decided whether it indeed had jurisdiction to hear the appeal, H & K attempted to withdraw its appeal. When H & K learned that it could not informally "withdraw" its appeal, a month and a half later it moved voluntarily to dismiss its appeal. Our Court of Appeals granted that motion before it decided whether it indeed had jurisdiction over H & K's appeal.

Thus, based on H & K's actions, for purposes of our claim preclusion analysis we hold that H & K did not ultimately "elect to stand on its complaint," and Judge Golden's July 27, 2007 Order was never transmuted into a "final" order. All elements of claim preclusion are thus not satisfied here.

### 2. *Judicial Estoppel*

But Balfour also argues that H & K is judicially estopped from asserting that the July 27, 2007 Order was not a final judgment. Balfour reports that it has incurred significant costs to defend the actions that H & K elected to pursue in our Court of Appeals, in state court, and in *Haines I* and *II*, where the parties have exchanged multiple briefs on the legal merits of H & K's declaratory judgment action. MTD1 at 18.

H & K contends that it argued that our Court of Appeals should deem Judge Golden's July 27, 2007 Order final because it believed that the Subcontract did not contain a condition precedent that would bar H & K from proceeding against Balfour on claims in which Balfour, and not PennDot, is responsible for the damages sought. Pl. MTD1 Resp. at 21. H & K argues that when it allegedly discovered that the condition precedent had been waived (because Balfour did not represent H & K's claims in its filing with PennDot), this altered the legal landscape and rendered its appeal moot. *Id.*

While we have just decided that this action is not claim precluded, we now address the issue of whether the entire action is judicially estopped, which is within our discretion to do.[7] *Krystal Cadillac–Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 337 F.3d 314, 319 (3d Cir. 2003). Our Court of Appeals has held that "a plaintiff, who has obtained relief from an adversary by asserting and offering proof to support one position, may not be heard later in the same court to contradict himself in an effort to establish against the

---

**7.** Balfour raised judicial estoppel by motion before Judge Golden in *Haines II* and Judge Golden entertained oral argument on that motion before he died. *See, e.g.,* Pl. MTD2 Resp., Ex. L, transcript of May 7, 2009 argument at 12 ("THE COURT: Because plaintiffs can come in in state court, unlike federal court, can withdraw cases with impunity. In federal court you can run into a problem." H & K's counsel responded, "I understand, Your Honor, yes.").

same adversary a second claim inconsistent with his earlier contention." *Id.* (internal quotation marks omitted). The Court also recognized "the intrinsic ability of courts to dismiss an offending litigant's complaint without considering the merits of the underlying claims when such dismissal is necessary to prevent a litigant from 'playing fast and loose with the courts.'" *Id.* (quoting *Scarano v. Central R. Co. of N.J.*, 203 F.2d 510, 513 (3d Cir. 1953)).

To be sure, the doctrine of judicial estoppel should only be applied to avoid a miscarriage of justice. *Id.* Judicial estoppel focuses on the relationship between the litigant and the judicial system, and seeks to preserve the integrity of that system. *Id.* at n. 7. In the absence of "any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." *Id.* (internal quotation marks omitted). But the estopped party need not have actually *gained* an advantage because "the application of judicial estoppel does not turn on whether the estopped party actually benefitted from its attempt to play fast and loose with the court." *Id.* at 324.

A party is judicially estopped if (1) it has taken two positions that are irreconcilably inconsistent, (2) it changed his or her position in bad faith (*i.e.*, with intent to play "fast and loose" with the courts), and (3) there is no lesser sanction that will adequately remedy the damage done by the litigant's misconduct. *Id.* Equity requires that the presiding court give the party to be estopped a meaningful opportunity to provide an explanation for its changed position. *Id.* at 320.

### a. *Irreconcilably Inconsistent Positions*

Here, H & K took two irreconcilably inconsistent positions. It argued be-

fore our Court of Appeals that "[t]he condition precedent that the District Court inserted into Article 2.2.20 of the Subcontract will never be achieved. And, accordingly, H & K will never be able to re-file its Complaint." MTD1, Ex. 5 at 3. H & K argued to our Court of Appeals that the Order should be deemed "final" because the District Court interpreted the Subcontract to require that H & K's claims should first be submitted to PennDot through Balfour before H & K could be permitted to bring a suit against Balfour. *Id.* H & K justified its appeal of the District Court's interpretation of the Subcontract because, as it without qualification put it to the Court of Appeals on September 5, 2007,

> Stated in the most succinct terms, Pa-DOT will never—nor should it—compensate BBCI (or H & K) for BBCI's breaches of its Subcontract with H & K. Accordingly, the condition precedent as interpreted by the District Court can never be met, H & K will never be permitted to pursue its claims against BBCI and BBCI will be able to freely breach the Subcontractor Agreement and damage H & K without accountability.

*Id.* at 4.

H & K argued that at least some of the damages that it sustained were due to Balfour's behavior, not PennDot's. *Id.* Because H & K believes it has claims against Balfour, and because Balfour had no legal avenue through which to seek compensation for those claims from PennDot (because PennDot was not a party to the Subcontract), H & K concluded that the condition precedent as Judge Golden defined it could "never be achieved" and PennDot would "never" compensate Balfour for H & K's breach of contract claims against Balfour. *Id.* at 3, 4. Thus, H & K argued, this "eliminates the possibility of a

second lawsuit." *Id.* at 5 n. 3 (emphasis added).

If we accept H & K's understanding of Judge Golden's interpretation of the condition precedent at face value, this was sound logic. H & K then argues that it changed its position when it allegedly learned that Balfour had filed a claim for compensation from PennDot without preserving H & K's claims. But this later-acquired knowledge was of no significance because all that Balfour had done was precisely what H & K argued to the Court of Appeals Balfour would do—seek compensation for its own claims against Penn-Dot *without* including H & K's claims. But H & K now argues that when Balfour filed a complaint with the Board of Claims *without* seeking such specific compensation for H & K's claims, Balfour (somehow) did something radically new. This purportedly paved the way for H & K to file "a second lawsuit" that H & K flat-footedly on September 5, 2007 told the Court of Appeals was an impossibility.

These positions are irreconcilably inconsistent. H & K argued before our Court of Appeals that it should be permitted to appeal because Balfour would "never" legally be able to seek compensation for H & K's claims against it from PennDot. H & K now argues before *us* that, precisely as it predicted to the Court of Appeals, Balfour failed to seek compensation from PennDot for H & K's claims against it. H & K contends that it relied on Balfour's representations to Judge Golden that it would present its claims before PennDot, but H & K also then knew—and indeed on September 5, 2007 stressed to the Court of Appeals—that Balfour would "never" be able to assert those claims when H & K argued that its appeal should be accepted. H & K cannot have it both ways.

■■■ H & K also took two irreconcilably inconsistent positions when it argued to our Court of Appeals that it would

"never be able to refile its complaint" but then—after the case had reposed on our Court of Appeals's docket for well over a year and the parties had been through the mandatory mediation process—it on November 4, 2008 filed "a second complaint" in the Court of Common Pleas of Montgomery County before bothering to voluntarily dismiss its appeal. H & K's thrice-used "never" to the Court of Appeals meant that there were no circumstances under which it could refile "a second complaint." Filing such a complaint while the appeal was still pending is far from "never".

H & K also represented to the state court in its second complaint—almost a year to the day after Balfour filed its amended complaint in the Board of Claims—that its appeal to our Court of Appeals had been dismissed, but it did not make any attempt—formal or informal—to withdraw its appeal until *after* it filed the second complaint. Compl. ¶ 32 ("H & K has voluntarily dismissed both the Remanded Montgomery County Action and the Third Circuit Appeal without prejudice"); Pl. MTD2 Resp., Ex. O. H & K has offered no explanation for why it took these irreconcilably inconsistent positions, nor why it represented to the Montgomery County Court of Common Pleas the untruth that its appeal had been dismissed when it had not then even tried to withdraw that appeal. Thus, we find that H & K took two irreconcilably inconsistent positions, and H & K has not provided an explanation to square them.

### b. *Bad Faith*

■■■ Our Court of Appeals held that a rebuttable inference of bad faith arises when averments in the pleadings demonstrate both knowledge of a claim and a motive to conceal that claim in the face of an affirmative duty to disclose. *Oneida Motor Freight, Inc. v. United Jersey*

*Bank,* 848 F.2d 414, 416–18 (3d Cir.1988). To determine whether H & K had knowledge of its claim and a motive to conceal that claim, we must examine the timing of H & K's actions. In its September 5, 2007 letter to our Court of Appeals, H & K argued that it would "never" be able to refile its complaint because H & K would "never" be able to meet the condition precedent as the District Court defined it. MTD1, Ex. 5 at 5 n. 3. H & K did not include the caveat that it would be able to refile if Balfour waived the condition precedent because it doubtless knew that our Court of Appeals would likely not accept jurisdiction if H & K had included such a disclaimer.

H & K represents that it was PennDot's April 29, 2008 letter explaining that because Balfour had not presented H & K's claims to PennDot—that is, the very reality H & K on September 5, 2007 predicted to the Court of Appeals that was the keystone of its assertion of finality—that led H & K to decide that its appeal of *Haines I* was moot. Compl. ¶ 127. And yet it was not until over six months later that H & K first informally attempted to "withdraw" its appeal—after it had availed itself of the benefits of pressure on Balfour of a pending appeal, the Third Circuit's mandatory mediation program and the obtaining of a briefing schedule.

H & K argues that it did not burden the judicial system because it moved to voluntarily dismiss its appeal before our Court of Appeals's jurisdiction ever attached. But after H & K elected to stand on its complaint, our Court of Appeals (1) elected not to summarily dismiss the appeal, (2) assigned a court-appointed mediator who attempted to broker a settlement between the parties, (3) entertained and ruled on motions, and (4) at H & K's September 25, 2008 request, issued a briefing schedule directing the parties to brief the merits of

H & K's appeal. MTD1, Ex. 6; Ex. 10; Pl. MTD2 Resp. at 6 n. 6; Ex. K.

Notably, Our Court of Appeals issued a briefing schedule on September 29, 2008 after receiving H & K's request four days earlier to set that schedule. Pl. MTD2 Resp., Ex. K. H & K filed its second complaint on November 4, 2008 in the Montgomery County Court of Common Pleas and did not move to voluntarily dismiss its appeal until December 17, 2008— two weeks *after* Balfour had filed a motion to dismiss H & K's appeal, and more than a month after it had filed its second complaint with the Court of Common Pleas.

Thus, we can only conclude that H & K was aware of its "new" claim well before it requested the briefing schedule. But it had the motive to conceal this claim in the hope of keeping the appellate pressure on Balfour while taking advantage of the Third Circuit's mandatory mediation program—all well before it formally moved to have its appeal voluntarily dismissed.

In addition, in the complaint that H & K filed on November 4, 2008 in the Montgomery County Court of Common Pleas, H & K represented to that court that "H & K has voluntarily dismissed both the Remanded Montgomery County Action and the Third Circuit Appeal without prejudice." Compl. ¶ 32. But that simply was not true. To the contrary, H & K's representation was "tantamount to a knowing misrepresentation to or even fraud on the court". *Krystal Cadillac–Oldsmobile,* 337 F.3d at 324 (internal quotation marks omitted).

H & K represented to the Montgomery County Court of Common Pleas that it had dismissed its Third Circuit appeal when in fact it had not even *filed* its motion to voluntarily dismiss its claim, let alone given Balfour the chance to respond or our Court of Appeals the chance to rule on it. As a result, Balfour removed this second

action to this Court, where *Haines II* has reposed since November 24, 2008, and where H & K had the benefit of Judge Golden's judicial resources, including oral argument on Balfour's motion to dismiss. H & K filed its second complaint while its appeal was still pending in our Court of Appeals, sought the jurisdiction of the Court of Common Pleas of Montgomery County before it was proper to do so, and thereby forced Balfour to defend itself simultaneously in three courts—Judge Golden's, the Court of Appeals, and the Common Pleas Court—for the same action.

In our view, once Judge Golden dismissed H & K's claims without prejudice, H & K had three options. First, it could have appealed, as it originally attempted to do, making the argument that Balfour was by then time-barred from bringing H & K's claims to PennDot and that Balfour could not assert claims on its behalf to the Board of Claims anyway. Second, H & K could have decided that Balfour was not time-barred from asserting H & K's claims (and had standing to bring them) and waited to refile its complaint once Balfour had collected, or failed to collect, on H & K's claims from PennDot. Or, third, H & K

could have decided that Balfour was not time-barred from asserting its claims, but when it realized that Balfour had "waived the condition precedent" by failing to represent H & K's claims (a new legal theory that H & K raises for the first time in this action), it could have refiled its complaint based on that alleged waiver.

For reasons known only to H & K's counsel, H & K did not view these options as mutually exclusive. Instead, H & K tried to play all the legal notes at once. In doing so, H & K affirmatively misrepresented its procedural position and its claims to the Court of Common Pleas of Montgomery County, to our Court of Appeals, and to Judge Golden.

H & K's ill-conceived strategy cost both sides money, wasted scarce judicial resources in both the federal and state court systems, and abused the Third Circuit's mandatory mediation process and that Court itself. Regrettably, we can only conclude that this was and is an "affront to the court's authority or integrity." *Henderson v. Chartiers Valley School,* 136 Fed.Appx. 456, 460 n. 4 (3d Cir.2005) (internal quotation marks omitted).[8] Thus, we find that H & K played fast and loose

---

**8.** Our Court of Appeals has noted that "a party has not displayed bad faith for judicial estoppel purposes if the initial claim was never accepted or adopted by a court or agency." *Dam Things from Denmark v. Russ Berrie & Co., Inc.,* 290 F.3d 548, 559 n. 16 (3d Cir. 2002) (quoting *Montrose Med. Group Participating Sav. Plan v. Bulger,* 243 F.3d 773, 778 (3d Cir.2001)). Here, although our Court of Appeals had not yet adopted H & K's claim that Judge Golden's July 27, 2007 Order was a final judgment, the Third Circuit's mandatory mediation program certainly had to accept H & K's claim to conduct the mediation. And although H & K knew about the "changed facts"—such as they were—ever since Penn-Dot's April 29, 2008 letter, it still pushed the Court of Appeals for a scheduling order on September 25, 2008 after the mediation failed. This was tantamount to affirmative misrepresentation because H & K had all the

information it needed to seek to voluntarily dismiss its appeal, and yet instead it continued to engage our Court of Appeals's resources for several more months. H & K correctly notes that our Court of Appeals has held that there is an exception to the general concept of judicial estoppel regarding jurisdictional facts or positions; courts generally refuse to resort to the principles of judicial estoppel to prevent a party from "switching sides on the issue of jurisdiction." *Whiting v. Krassner,* 391 F.3d 540, 544 (3d Cir.2004) (internal quotation marks omitted). But here H & K did not just "switch sides" on the jurisdictional issue. H & K also determined that it had a new claim that it believed rendered its appeal moot, but it concealed this from our Court of Appeals for months until it had availed itself of the Third Circuit mandatory mediation program and sought and obtained a briefing schedule.

with the courts—with as many tribunals as it could, in fact—and acted in bad faith.

### c. *No Lesser Sanction*

█ As our Court of Appeals has noted, "[t]he fact that a sanction is to be used sparingly does not mean that it is not to be used when appropriate." *Krystal Cadillac–Oldsmobile,* 337 F.3d at 325. To employ judicial estoppel, we must find that it is tailored to address the harm identified and that no lesser sanction would adequately remedy the damage done by H & K's misconduct. Here, any lesser sanction—such as, for example, ordering H & K to pay all of Balfour's legal fees and costs associated with its multi-forum folly—would still reward H & K for duplicitous conduct in the course of its appeals process. More seriously, it would not compensate the three courts for their waste of scarce judicial resources. To allow H & K to continue to press its claims in *Haines II* would perpetuate an injustice and would compromise the integrity of the state and federal judicial systems. Thus, we find that judicial estoppel is the only adequate sanction under these extreme circumstances.

### d. *Opportunity to Explain*

█ Finally, equity requires that we give the party to be estopped a meaningful opportunity to provide an explanation for its changed positions. *Id.* at 320. But here, H & K has had not one, but *two* opportunities to address the issue of judicial estoppel, once before Judge Golden—when Balfour raised the issue in its original motion to dismiss[9] and Judge Golden afforded oral argument on that motion—and once before us. In addition, most of the pertinent facts are taken from court records, and H & K itself supplied the rest. Thus, we find that H & K has had

fair opportunities to argue that the doctrine does not apply, and has failed to present persuasive arguments on that subject.

### *Conclusion*

We therefore hold that H & K is judicially estopped from retreating from its unqualified representation to the Court of Appeals that Judge Golden's July 27, 2007 Order "eliminates the possibility of a second lawsuit" and therefore grant Balfour's motion to dismiss the second lawsuit H & K filed. Because we have granted Balfour's motion to dismiss *Haines II* pursuant to Fed.R.Civ.P. 12(b)(6), we need not address Balfour's Fed.R.Civ.P. 12(b)(7) contentions.

### *ORDER*

AND NOW, this 1st day of June, 2011, upon consideration of defendant's amended motion to dismiss (docket entry # 29), plaintiff's response thereto (docket entry # 32), and defendant's reply (docket entry # 35), and each brief's exhibits, and in accordance with the accompanying Memorandum, it is hereby ORDERED that:

1. Defendant's motion to dismiss (docket entry # 29) is GRANTED;

2. Plaintiff's complaint is DISMISSED WITH PREJUDICE; and

3. The Clerk of Court shall CLOSE this case statistically.

---

9. Indeed, H & K devoted five pages of its response to that motion to judicial estoppel,

*see* Pl. MTD1 Resp. at 18–23.